Kimberly S. SCHMIDT, Appellant–
Petitioner,

v.

David A. SCHMIDT, Appellee–
Respondent.

No. 17A03–0401–CV–27.

Court of Appeals of Indiana.

Aug. 5, 2004.

Daniel J. Sigler, D.J. Sigler Jr., Bloom Gates Sigler & Whiteleather, Columbia City, IN, Attorneys for Appellant.

Edward E. Beck, Benjamin S.J. Williams, Shambaugh Kast Beck & Williams Fort, Wayne, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Kimberly S. Schmidt ("Wife") appeals the denial of her motion to correct error following the trial court's judgment in favor of David A. Schmidt ("Husband") on his request for declaratory relief regarding the interpretation of the parties' antenuptial agreement. The trial court interpreted the parties' antenuptial agreement and concluded that, under the agreement, Husband and Wife agreed to separate their property upon dissolution of their marriage. Wife raises two issues, which we consolidate and restate as whether the trial court erred by granting declaratory relief to Husband based upon its interpretation of the antenuptial agreement as separating Husband and Wife's property upon dissolution of their marriage. We reverse and remand.

The relevant facts follow. On June 25, 1988, Husband and Wife married. Five days before their marriage, Husband and Wife entered into an antenuptial agreement, which provided, in relevant part:

\* \* \* \* \*

### SECTION THREE INTENT OF PARTIES

A. *Setting Forth Property Rights*

Parties have the intent and desire to define and set forth the respective rights of each in the property of the other after their marriage.

B. *Support of Prospective Wife and Children.*

[Husband] intends and desires to provide adequately and fairly for [Wife], but will not provide for her child by a previous marriage.

C. *Separate Property*

Parties intend and desire that all property owned respectively by each of them at the time of their marriage and

all property that may be acquired by each of them from any source during their marriage shall be respectively their separate property, except as otherwise provided herein.

### SECTION FOUR PROPERTY TRANSFERRED

Neither party will transfer any real or personal property from one to the other as a result of this agreement or their marriage.

### SECTION FIVE DEATH OF PARTIES DURING MARRIAGE

A. *Death of Husband.*

[Husband] agrees to provide in his will, which he agrees to make, that, in case of his death during his marriage, and while he is living as husband and wife with [Wife], she is to receive as her inheritance all real estate owned by [H]usband and all personal property owned by [H]usband except for [H]usband's stock in Columbia City Engineering, Inc.

B. *Death of Wife.*

[Wife] agrees to provide in her will, which she agrees to make, that, in case of her death during her marriage, and while she is living as husband and wife with [Husband], he is to receive as his inheritance all of [W]ife's real estate, if any, and all of [W]ife's personal property except that [W]ife may bequeath her engagement and wedding rings to her daughter[.]

### SECTION SIX WAIVER OF RIGHT TO ELECT TO TAKE AGAINST WILL OF SURVIVING SPOUSE

Each of the parties desires to accord to the other the absolute and unrestricted privilege and power to dispose of any and all property on death which may belong to him or her at such time. The parties clearly understand that if one should predecease the other, the surviving spouse's statutory interest in the estate of the deceased spouse would be in excess of the provision herein made for each party. Both parties stipulate that they have been fully advised in the premises of this agreement in its entirety by legal counsel of their own selection.

Each of the parties forever waives, releases, and relinquishes any right or claim of any kind, character, or nature whatsoever that either may have or shall have in and to the estate, property, assets, or other effects of the other under any present or future law of the State of Indiana, or any other state, or of the United States, except as otherwise specifically provided for in this agreement or any subsequent agreement executed by the parties, and each of the parties forever waives, releases, and relinquishes any claim that he or she now has or may have, or shall have, pursuant to the provisions of Indiana law, as such law now exits or may hereafter be amended, or pursuant to any present or future law of any state or of the United States, to elect to take in contravention of the terms of any Last Will of the other, including any Last Will now executed or which may be executed hereafter, or any disposition of property made by the other during his or her lifetime or otherwise. Each of the parties shall refrain from any action or proceeding that may tend to avoid or nullify to any extent or in any particular the term of any such Last Will of the other.

### SECTION SEVEN LIFE INSURANCE POLICIES

\* \* \* \* \*

It is agreed that [H]usband shall cause [Wife] to be named as the sole

beneficiary of [his two] policies of life insurance.

\* \* \* \* \*

It is agreed and understood that [W]ife shall have authority to designate her daughter ... as a beneficiary under [her life insurance] policy in such amounts as [W]ife deems appropriate, and the amounts not so designated as benefiting [Wife's daughter], shall be designated to be benefits for [Husband].

### SECTION EIGHT STATUS OF PROPERTY

All real and personal property owned by either of the parties at the time of their marriage, and all real and personal property that either may acquire from any source whatsoever during their marriage, shall be the respective separate property of each party except as otherwise provided herein. The parties understand that they may also acquire real or personal property in their joint names, with a right of survivorship, during their marriage and that disposition of said property upon the death of one of the parties shall be in accordance with applicable laws affecting jointly owned property or property owned as tenants by the entireties.

\* \* \* \* \*

### SECTION THIRTEEN EFFECT OF DISSOLUTION OF MARRIAGE, SEPARATION, OR ANNULMENT

The foregoing provisions of this agreement, with the exception of the clauses contained in Section Six, shall be contingent upon the parties not having their marriage dissolved, or becoming separated by Decree of a Court of competent jurisdiction or separated by written agreement, and the marriage of the parties not becoming annulled. In the event of such dissolution of marriage, separation, or annulment, each shall return and reconvey to the other any and all property that has come into his or her possession from the other by the force of this agreement.

\* \* \* \* \*

Appellant's Appendix at 6–11. Husband's attorney drafted the antenuptial agreement, and as part of the agreement, Husband and Wife stipulated that they were either represented by counsel or had the opportunity to be represented by counsel and that they read the agreement and had it explained to them by counsel.

In November 2002, Wife petitioned for dissolution of the marriage. Thereafter, Husband filed a motion for declaratory relief, requesting that that trial court determine the parties' rights to property under the terms of the antenuptial agreement. The trial court held a hearing on Husband's motion and issued an order finding that, under the terms of the antenuptial agreement, Husband and Wife agreed to separate their property upon dissolution of their marriage. The trial court's order provided:

1. [Wife] and [Husband] were married on June 25, 1988.

2. [Wife] and [Husband] had previously entered into an Antenuptial Agreement on June 20, [1988]. A copy of said Agreement is attached hereto, made a part hereof, and marked exhibit "A".

3. It is well recognized law in Indiana that such agreements are favored in the law and they are to be enforced whenever they meet certain minimum standards of fundamental fairness in form and procedure.

4. The parties both desire the said Agreement to be interpreted by the Court.

5. Both parties agree that the controlling factor in interpreting the said agreement is the intent of the parties at the time the parties entered into the agreement.

6. Both parties agree that the intent of the parties is to be found within the four corners of the document if possible.

7. The parties further both agree that the intent of the parties in this action can be found from the four corners of the document and that, therefore, parole evidence is not necessary nor is it allowed.

8. The parties, however, do not agree on the interpretation of the intent of the parties garnered from the four corners of the document.

9. [Wife] contends that a fair reading of the document show[s] the intent of the parties was to specifically state certain outcomes for certain rights of the parties if the marriage ended by other than a dissolution type proceeding and there was basically to be considered no agreement if the marriage ended in divorce.

10. [Husband] contends that a fair reading of the document leads to a conclusion that it was the intent of the parties to include divorce planning in the agreement, and that if one occurred, that each party was to keep as its own separate property any property brought into the marriage, and any after acquired property of that party, and should have returned any property transferred to the other party during the course of the marriage.

11. The parties both contend that it is important to look at the agreement as a whole to interpret the intent of the parties. The Court agrees, however, Sections Three, Four, Eight and Thirteen are of particular interest to the Court.

12. Section Three is entitled "Intent of the Parties[.]" Subsection "C" states:

Parties intend and desire that all property owned respectively by each of them at the time of their marriage and all property that may be acquired by them from any source during their marriage shall be respectively their separate property, except as otherwise provided herein.

13. Section Three, Subsection "C" is clearly a statement that the parties intend to keep their then present and all future property separate, unless the agreement gives exceptions stating otherwise.

14. Section Four entitled "Property Transferred" states "[n]either party will transfer any property to the other as a result of this agreement or their marriage." The plain intent of this section is to not require either party to transfer any property to the other to entice the other party to sign the agreement or to enter into the marriage.

15. Section Eight is entitled "Status of Property" and states in pertinent part:

All real and personal property of the parties at the time of their marriage, and all real and personal property that either may acquire from any source whatsoever during their marriage shall be the respective separate property of each party except as otherwise provided herein.

16. Section Thirteen is entitled "Effect of Dissolution of Marriage, Separation, or Annulment" and states:

The foregoing provisions of this agreement, with the exception of the clauses contained in Section Six, shall be contingent upon the parties not having their marriage dissolved, or becoming separated by a Decree of a

Court of competent jurisdiction or separated by written agreement, and the marriage of the parties not becoming annulled. In the event of such dissolution of marriage, separation, or annulment, each shall return and reconvey to the other any and all property that has come into his or her possession from the other by force of this agreement.

17. The parties both agree that even in the event of a dissolution of marriage, separation, or annulment it was the intent of the parties that the terms of Section Six concerning the waiver of each party's right to elect to take against the will of the surviving spouse is to survive.

18. It appears from a reading of the entire agreement that it was the general intent of the parties at the time they entered into the agreement for each of them to keep their respective property separate (including after acquired property). Such a reading is clearly consistent from Sections Three, Four, and Eight. The final sentence of Section Thirteen is also consistent with the intention of keeping the property separate.

19. The one sentence in the entire agreement that arguably casts doubt upon the conclusion that the property should be considered separate and that neither party has a claim upon the other's property is the first sentence of Section Thirteen.

20. [Wife] contends that the meaning of the first sentence of Section Thirteen is that in the event of a divorce, such as here, the entire agreement, save Section Six, is a nullity. The Court does not agree. To find as [Wife] contends would ignore the plain language of the stated intent of the parties in Section Three and the stated status of property in Section Eight. Furthermore, such an interpretation would give the second sentence of Section Thirteen no purpose or meaning whatsoever.

21. The meaning of the first sentence of Section Thirteen is to state that the duties each party owes to the other, but save for those contained in Section Six, no longer exist if the marriage ends in divorce.

22. It is clear from a reading of the entire Antenuptial Agreement that it was the intent of the parties at the time they entered into the agreement that, should the parties become divorced, each party should retain any property they brought into the marriage that did not become joint property along with any property acquired by each of them separately during the marriage.

23. This decision does not effect (sic) joint property, if any, owned by the parties. The agreement clearly does not intend to effect (sic) the legal rights of the parties as they pertain to joint property.

24. It is the order of the Court that the Antenuptial Agreement is to be interpreted consistent with the findings herein.

Appellant's Appendix at 15–20. Wife filed a motion to correct error, which the trial court denied.

The sole issue is whether the trial court erred by granting declaratory relief to Husband based upon its interpretation of the antenuptial agreement as separating Husband and Wife's property upon dissolution of their marriage. Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment or decree. Ind.Code § 34–14–1–1 (1998); *see also Ember v. Ember,* 720 N.E.2d 436, 438 (Ind.Ct.App.1999).

■ Here, the trial court entered findings of fact and conclusions thereon on its own motion when it rendered the judgment. In reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Ember,* 720 N.E.2d at 438. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997). A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* Where the trial court issues sua sponte findings of fact and conclusions thereon, as we have here, the sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

■ Wife argues that the trial court erred by granting declaratory relief to Husband because the trial court failed to properly interpret the antenuptial agreement. "Antenuptial agreements are legal contracts entered into prior to marriage that attempt to settle the interest each spouse has in property of the other, both during the marriage and upon its termination." *Rider v. Rider,* 669 N.E.2d 160, 162 (Ind.1996), *reh'g denied.* Antenuptial agreements are to be construed according to principles applicable to the construction of contracts. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* To interpret a contract, a court first considers the parties' intent as expressed in the language of the contract. *Id.* The court must read all of the contractual provisions as a whole to accept an interpretation that harmonizes the contract's words and phrases and gives effect to the parties' intentions as established at the time they entered the contract. *Id.* If the language of the agreement is unambiguous, the intent of the parties must be determined from the four corners of the document. *Bressler v. Bressler,* 601 N.E.2d 392, 395 (Ind.Ct.App. 1992). The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms. *Id.*

Husband and Wife agree that the antenuptial agreement was a valid, binding agreement and that it was unambiguous.[1] They do not dispute the provisions of the antenuptial agreement that address the disposition of their property during their marriage and upon the death of one of the parties. However, they dispute the trial court's interpretation of how the antenuptial agreement treats the disposition of their property upon dissolution of their marriage.

Specifically, the parties dispute the meaning of Section Thirteen and how it interacts with Section Three (C). Section Three provides:

> *SECTION THREE INTENT OF PARTIES*
>
> \* \* \* \* \*
>
> C. *Separate Property*

---

1. Wife contends, however, that based upon the trial court's interpretation of the antenuptial agreement, it appears that the trial court concluded, but did not explicitly state, that the agreement was ambiguous. Thus, Wife argues in the alternative that if this court finds the agreement to be ambiguous, we should remand for a hearing in which extrinsic evidence of the parties' intent can be submitted. Because we find that the antenuptial agreement was unambiguous, *see infra,* we need not address Wife's alternative argument.

Parties intend and desire that all property owned respectively by each of them at the time of their marriage and all property that may be acquired by each of them from any source during their marriage shall be respectively their separate property, except as otherwise provided herein.

Appellant's Appendix at 7. Section Thirteen provides:

### SECTION THIRTEEN EFFECT OF DISSOLUTION OF MARRIAGE, SEPARATION, OR ANNULMENT

The foregoing provisions of this agreement, with the exception of the clauses contained in Section Six,[2] shall be contingent upon the parties not having their marriage dissolved, or becoming separated by Decree of a Court of competent jurisdiction or separated by written agreement, and the marriage of the parties not becoming annulled. In the even of such dissolution of marriage, separation, or annulment, each shall return and reconvey to the other any and all property that has come into his or her possession from the other by the force of this agreement.

*Id.* at 11.

Wife does not dispute that Section Three of the antenuptial agreement contains a general statement of intent that Husband and Wife's property owned at the time of marriage and obtained during marriage would remain the separate property of each during their marriage. However, she argues that Section Three is limited by the language "except as otherwise provided herein" and that the agreement indeed provides otherwise by the inclusion of the specific language in Section Thirteen, which provides that upon the dissolution of

their marriage, the general provision of intent to have separate property is negated. In other words, Wife argues that the first sentence of Section Thirteen provides that, upon the dissolution of Husband and Wife's marriage, all other sections of the agreement, including the section that provides that the parties' property owned at the time of marriage and acquired during the marriage be separate property, are no longer applicable upon divorce. Therefore, she argues that all property is included in the marital pot subject to distribution during the dissolution proceeding. We agree with Wife.

In reviewing the antenuptial agreement, we conclude that the language of the agreement is unambiguous in its disposition of Husband and Wife's property during their marriage, upon the death of one of the parties, and upon dissolution of their marriage. First, the antenuptial agreement unambiguously provides that during the marriage, the individually owned property of Husband and Wife is to remain separate property "except as otherwise provided" in the agreement. Appellant's Appendix at 7 (Section Three), 10 (Section Eight). Next, the antenuptial agreement unambiguously provides that upon the death of one of the parties, Husband and Wife will leave certain property to the other via their wills, that they waive their rights to take against the will of the surviving spouse, and that they will or can name each other as a beneficiary on their respective life insurance policies. Finally, the antenuptial agreement unambiguously provides that "[t]he foregoing provisions of this agreement, with the exception of the clauses contained in Section Six [waiver of the right to take against the will], shall be

2. Section Six addresses waiver of the right of the surviving spouse to take against the will of the other spouse.

contingent upon the parties not having their marriage dissolved[.]" *Id.* at 11. Thus, the antenuptial agreement provides that the other provisions of the antenuptial agreement are no longer operational upon dissolution of Husband and Wife's marriage.[3]

The trial court interpreted the first sentence of Section Thirteen to mean that "the *duties* each party owes to the other, but save for those contained in Section Six, no longer exist if the marriage ends in divorce" and concluded that upon divorce Husband and Wife would retain any property they either brought into the marriage or acquired separately after their marriage. Appellant's Appendix at 20 (emphasis added). However, the plain language of that sentence in Section Thirteen is that the "foregoing provisions" of the antenuptial agreement no longer exist if the marriage ends in divorce. Because we must interpret the provisions of the antenuptial agreement according to their plain and ordinary meaning, *In re Conner*, 713 N.E.2d 883, 886 (Ind.Ct.App.1999), we conclude that the trial court's substitution of the term "duties" for the phrase "foregoing provisions" and resulting interpreta-

tion of Section Thirteen is clearly erroneous.

■ Although there may be other purposes for an antenuptial agreement, it is usually prepared to provide for the disposition of property in the event of the death of one of the parties or the dissolution of the marriage. A provision is often made that each party waives any rights to property that the party might have as a spouse upon dissolution of the marriage or as a surviving spouse in the event of the death of the other. A provision is often made to substitute dispositive provisions of the antenuptial agreement for the rights waived. An example would be an agreement whereby the separate property of each spouse would not be subject to division as marital property upon dissolution.

Here, however, the antenuptial agreement contains no such provision when discussing the dissolution of the marriage. The only section of the antenuptial agreement that discusses what happens in the event of a divorce is Section Thirteen, and the language of that provision does not make any specific provisions for what will happen to the separate property in the event that Husband and Wife divorce.[4] Indeed, the plain and ordinary meaning of

**3.** We are puzzled by the language in Section Thirteen that provides that Section Six, which is the provision dealing with the waiver of the right of the surviving spouse to take against the will of the other spouse, is still applicable if the parties' marriage ends in divorce. *See* Ind.Code § 29-1-3-1 (2003). If the parties' marriage ends in divorce, they would no longer be a "spouse" who has a right to take against the will of the decedent; therefore, they would not need a provision that waives their right as a surviving spouse to take against the will.

**4.** Husband argues that the second sentence of Section Thirteen makes provisions for what will happen to the parties' property in the event that they should divorce. We disagree. The second sentence in Section Thirteen provides, "In the event of such dissolution of

marriage, separation, or annulment, each shall return and reconvey to the other any and all property that has come into his or her possession from the other *by the force of this agreement.*" Appellant's Appendix at 11 (emphasis added). Thus, this sentence specifically requires that Husband and Wife return any property that they transferred to one another as part of the antenuptial agreement. However, Section Four of the antenuptial agreement provides that "[n]either party will transfer any real or personal property from one to the other as a result of this agreement or their marriage." *Id.* at 7. Because no property would be transferred between the parties pursuant to the antenuptial agreement, there would be no property to return upon dissolution.

the first sentence of Section Thirteen is that the other sections of the antenuptial agreement, except Section Six, are contingent upon the parties "not having their marriage dissolved." Appellant's Appendix at 11.

Notwithstanding the fact that the plain language of the antenuptial agreement provides that the provisions of the antenuptial agreement regarding separate property are no longer operational upon dissolution of Husband and Wife's marriage, we find *Conner* instructive. There, the husband and wife disagreed about whether certain property should be included in the marital pot for distribution in their dissolution. *Conner*, 713 N.E.2d at 885. The parties had a provision in their antenuptial agreement dealing with "property covered" that provided that the "property [listed on attached schedules]" and "any property they may hereafter acquire ... or any other property or interests in property owned by each party shall be owned as separate property of each party during marriage, except as elsewhere provided herein." *Id.* at 885 (brackets included in original and italics removed). The antenuptial agreement also had a provision dealing with "dissolution of marriage" that provided that if their marriage ended in divorce, the wife was entitled to a percentage of the "marital increment," which was defined as "the collective net worth of the parties at the time of separation less the collective and cumulative net worth of the parties prior to the marriage, *without regard to whether the property is individually owned.*" *Id.* at 886 (italics in original). The trial court interpreted the antenuptial agreement to include property titled solely in the husband's name in the marital pot, and husband appealed. *Id.* at 885. On appeal, we held that the section dealing with "property covered" waived all right to the other party's individually held property except as otherwise provided and that

the section dealing with "dissolution of marriage" modified the "property covered" section by creating the "martial increment," which included individually held property. *Id.* at 886.

Like the parties in *Conner*, here, Husband and Wife's antenuptial agreement contained a provision that their individually held property would remain separate property during their marriage, but that provision was modified by a later provision in the antenuptial agreement that dealt with the disposition of property upon divorce. In summary, the first sentence of Section Thirteen unambiguously provides that, upon the dissolution of Husband and Wife's marriage, all other sections of the agreement, including the section that provides that the parties' property owned at the time of marriage and acquired during the marriage be separate property, are no longer applicable upon divorce. Therefore, we conclude that the trial court erred by granting declaratory relief in favor of Husband and by denying Wife's motion to correct error.

For the foregoing reasons, we reverse the trial court's grant of declaratory relief in favor of Husband and the trial court's denial of Wife's motion to correct error and remand to the trial court for proceedings consistent with this opinion.

Reversed and remanded.

ROBB, J., concurs.

DARDEN, J., concurs in result with separate opinion.

DARDEN, Judge, concurring in result.

I concur in result because I believe the trial court's grant of declaratory relief in favor of the husband was error. In my opinion, reversal is warranted based upon the ambiguity apparent upon the face of Section Thirteen. Because I find Section

Thirteen to be ambiguous, I would remand to the trial court to hear evidence concerning the parties' intent as to the meaning of Section Thirteen when they entered into the prenuptial agreement.