NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1533

LAWLER MANUFACTURING CO., INC.,

Plaintiff-Appellant,

v.

BRADLEY CORPORATION,

Defendant-Appellee,

and

KEVIN B. KLINE,

Defendant.

Wayne C. Turner, McTurnan & Turner, of Indianapolis, Indiana, argued for plaintiff-appellant. With him on the brief was Shannon D. Landreth, and Michael R. Limrick, Bingham McHale LLP, of Indianapolis, Indiana.

Barry L. Grossman, Foley & Lardner LLP, of Milwaukee, Wisconsin, argued for defendant-appellee. With him on the brief was George E. Quillin, of Washington, DC.

Appealed from: United States District Court for the Southern District of Indiana

Judge Larry J. McKinney

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1533

LAWLER MANUFACTURING CO., INC.,

Plaintiff-Appellant,

v.

BRADLEY CORPORATION,

Defendant-Appellee,

and

KEVIN B. KLINE,

Defendant.

Appeal from the United States District Court for the Southern District of Indiana in Case No. 1:98-CV-1660, Chief Judge Larry J. McKinney.

_____

DECIDED: May 27, 2008

_____

Before MAYER, LOURIE, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge LOURIE. Circuit Judge MAYER dissents.

LOURIE, Circuit Judge.

Lawler Manufacturing Co., Inc. ("Lawler") appeals from the final judgment of the

U.S. District Court for the Southern District of Indiana interpreting and enforcing the

license agreement between Lawler and Bradley Corporation ("Bradley").  <u>Lawler Mfg. Co., Inc. v. Bradley Corp.</u>, No. 1:98-cv-1660-LJM-JMS (S.D. Ind. June 22, 2007). Because we find that the district court erred in construing the license agreement, we <u>reverse</u> and <u>remand</u>.

## BACKGROUND

This case began when Lawler accused Bradley and one of its employees of misappropriating Lawler's trade secrets and infringing Lawler's patents by making and selling Lawler's patented valve technology.  <u>Lawler Mfg. Co., Inc. v. Bradley Corp.</u>, No. IP 98-1660-C M/S, 2000 WL 1456336 (S.D. Ind. Apr. 26, 2000).  On April 26, 2000, the court issued a preliminary injunction prohibiting Bradley from making, using, selling, or offering to sell various valve products until the conclusion of the trial.  <u>Id.</u> at *33.

In March 2001, after a <u>Markman</u> hearing, but before going to trial on the infringement issue, the parties reached a settlement.  Pursuant to the settlement, Lawler and Bradley also entered into a consent decree and a license agreement, and the patent infringement and misappropriation claims were dismissed.  The license agreement granted Bradley the right to manufacture and sell valves covered by Lawler's patents in exchange for royalty payments equal to ten percent of the selling price of the valves.  However, in the event that Bradley invoiced or shipped a valve in combination with another product, an alternative royalty provision in Section 3.1 of the license agreement would determine the royalty.  The pertinent part of Section 3.1 of the license agreement containing the alternative royalty provision reads as follows:

> 3.1:  . . . If a Licensed Unit is invoiced or shipped in combination in another product <u>such as</u> an emergency shower or eyewash, the Selling Price for such Licensed Unit shall be the average of the Selling Prices of Thermostatic Mixing Valves of such model invoiced by Bradley or an

affiliate (whichever is higher) not in combination in another product during the reported calendar quarter. . . (emphasis added).

Under this provision, royalties on "combination" products are to be 10% of the average selling price of the valves, not the actual selling price of the products as a whole. Items sold by Bradley that are not "combination" products are subject to the same 10% royalty, but imposed on the actual selling price of the full product rather than on an average valve price. Products that are not "in combination" for purposes of Section 3.1 are subject to a minimum royalty floor, while "combination" products have no such minimum, but are simply 10% of the actual selling price. In this case, the royalty on the products at issue would be lower if they are considered "combination" products and thus governed by the alternative royalty provision, than if they are considered non-combination products. The parties agreed in the settlement agreement that the district court would retain jurisdiction of the case in order to resolve any future disputes relating to any of the agreements.

After entering into the license agreement, Bradley began selling valves covered by Lawler's patents and duly paid the appropriate royalties to Lawler. Bradley also sells other products, including emergency showers and eyewashes that can be sold with a patented valve, but can also be sold without a valve. Bradley paid royalties on the emergency showers and eyewashes that contained patented valves in accordance with the alternative royalty provision. Sometime after entering into the license agreement Bradley began selling custom cabinet and piping fixtures connected to the Lawler valves. Lawler paid lower royalties on these products according to the alternative royalty provision. It is the royalty payments arising from the sale of valves combined with piping and cabinets that are at issue on appeal.

On December 20, 2005, Lawler notified Bradley that it considered Bradley to be in default of the license agreement. Bradley subsequently filed a motion in the district court to enforce the various agreements between the parties. Lawler responded by filing a motion to terminate the license agreement, presenting three arguments in support of a finding of default: failure to properly mark its products as patent-protected, obstruction of Lawler's audit rights, and underpayment of royalties.

The district court found that Bradley's underpayment of royalties did not amount to a breach of the license agreement and, on June 22, 2007, the court therefore denied Lawler's motion and granted Bradley's motion in part. The court found that the term "such as" in Section 3.1 of the license agreement meant "for example," and therefore that any product that Bradley shipped or invoiced in combination with a valve triggered the alternative royalty provision of Section 3.1. The court also held that Bradley did not fail to properly mark its products and did not obstruct Lawler's audit rights.

Lawler then sought reconsideration of the district court's order, challenging only the court's decision regarding the underpayment of royalties. The district court denied Lawler's motion for reconsideration and entered judgment. Lawler Mfg. Co., Inc. v. Bradley Corp., No. 1:98-cv-1660-LJM-JMS, slip op. (S.D. Ind. July 23, 2007).

Lawler timely appealed the district court's judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review the interpretation of contractual terms under the law of the regional circuit from which the appeal arises. DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 495 F.3d 1005, 1013 (Fed. Cir. 2006). This case originates from the Seventh

Circuit, which applies the law of the state chosen by the contracting parties when settling contract disputes. Biomet Orthopedics, Inc. v. TACT Med. Instruments, Inc., 454 F.3d 653, 654 (7th Cir. 2006). Section 10.5 of the license agreement in this case states that the agreement is to be governed by Indiana law. Under Indiana law, construction of contract terms is a question of law that is reviewed de novo. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006). Indiana follows the "four corners rule" of contract interpretation; courts are not to look beyond the text of the contract in determining the parties' intent if the terms are unambiguous. Schmidt v. Schmidt, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004). Neither party has claimed that the disputed term is ambiguous.

On appeal, Lawler argues that the alternative royalty provision established by Section 3.1 of the license agreement is limited to sales of valves in combination with assemblies that are similar in type to eyewashes and emergency showers. The court's broad interpretation of "such as," Lawler argues, renders the recitation of emergency showers and eyewashes redundant, as any assembly consisting of a valve and any other product would be subject to the alternative royalty provision. Furthermore, Lawler argues that the cabinets and piping sold by Bradley, and for which royalties were improperly paid to Lawler under Section 3.1's alternative royalty scheme, are significantly different from emergency showers and eyewashes, and thereby not entitled to the alternative royalty treatment. Lastly, Lawler argues that Bradley's unilateral use of the alternative royalty provision in connection with the cabinets and piping is a material breach that justified Lawler's termination of the license agreement.

Bradley responds that the district court correctly interpreted Section 3.1 of the license agreement as including the cabinets and piping sold by Bradley. Furthermore, according to Bradley, there is no evidence in the license agreement to suggest that the parties intended to limit Section 3.1 to specific combinations of products.

We agree with Lawler that the district court misinterpreted the "such as" term of Section 3.1. The court's interpretation would allow any product in combination with a valve to be covered by the alternative royalty provision of Section 3.1. Lawler Mfg. Co., Inc. v. Bradley Corp., No. 1:98-cv-1660-LJM-JMS, slip op. at 1 (S.D. Ind. July 23, 2007). The question before us is whether that term, read in the context of the agreement, is restrictive, as Lawler urges, or merely explanatory, as the court found. We find that it is restrictive. "Such as" refers to items similar to what are recited rather than indicating that the recited items are just examples of what is covered by that provision.

The district court's interpretation of the "such as" clause effectively renders that clause superfluous. If all combinations of products qualified for Section 3.1's alternative royalty provision, as the district court held that they do, there would be no need to list specific examples of included combinations. Nor are the two alleged examples – emergency showers and eyewashes – necessary to clarify the term "in combination" in Section 3.1 because that term, as the district court interpreted it, is readily understood without the examples. Even if examples were needed to understand the "in combination" term, listing only two very specific examples does not justify the all-inclusive nature of the court's reading of that term. Thus, an interpretation that the "such as" clause merely provides examples of combinations covered by that clause is an interpretation that renders that phrase superfluous. Such an interpretation is in direct

conflict with Indiana law, which requires that all contract terms have effect. See Eskew v. Cornett, 744 N.E.2d 954, 957 (Ind. Ct. App. 2001) (noting that contracts must be construed so that the "language is construed so as not to render any words, phrases, or terms ineffective or meaningless"). The parties' inclusion of the "such as" phrase in Section 3.1 must either have been intended to provide some guidance as to the limited types of combinations that the parties contemplated for inclusion in the alternative royalty calculation, or to provide meaningless surplusage. Indiana law constrains us from finding the latter. Thus, the alternative royalty provision of Section 3.1 applies only to combinations of products that are similar to emergency showers and eyewashes.

We then must turn to the question whether the combination products which Bradley argues fall under the alternative royalty provision are similar to emergency showers and eyewashes. Lawler presented evidence showing that emergency showers and eyewashes are products that have significant value whether or not they are sold in conjunction with a valve, while the cabinets and piping sold by Bradley are merely meant to encase the valve and have no value without the valve. Lawler presented further evidence showing that cabinets and piping are generic add-ons, with the valve constituting the bulk of the value to the customer. Thus, Lawler presented evidence showing that the cabinet and piping products are not similar to emergency showers and eyewashes.

Bradley did not dispute Lawler's evidence on the nature of the products with any evidence of its own. Instead, Bradley argued that Lawler impermissibly relies on industry practice to interpret the "such as" clause. Thus, Bradley rests its position on contract interpretation, which we have resolved against it. Lawler's evidence was, in

contrast, not provided to interpret the contract, but rather to determine whether the products that Bradley sold are similar to the products that the contract specifically designates in the alternative royalty provision. Factual evidence was required in order to make such a determination, and Bradley did not counter Lawler's evidence. Based upon the evidence before us, and Bradley's complete lack of evidence on this point, we can only conclude that the cabinets and piping at issue are not similar to emergency showers and eyewashes, and therefore are not eligible for the alternative royalty provision of Section 3.1.

Lastly, Lawler urges this court to terminate the license agreement due to Bradley's failure to pay royalties. Section 8.1 of the license agreement states that "the failure of Bradley . . . to pay any Royalties when due hereunder and the expiration of fifteen (15) days after receipt of a written notice from Lawler requesting the payment of such Royalties" constitutes a default of the agreement. Section 8.1 then requires Lawler to notify Bradley of the termination of the agreement, which occurs thirty days following the notice of termination.

Lawler's argument that Bradley has breached the agreement is dependent upon a conclusion that sales of Bradley's cabinets and piping products fall outside of the alternative royalty provision, and we have held as much. Hence the district court's decision that Bradley properly paid royalties under Section 3.1 must be reversed. Whether royalties should have been paid under some other provision of the license agreement, and in what amount, and whether Lawler was otherwise entitled to terminate the license agreement for underpayment are not matters that can be reached by this court on the present record. There is also insufficient evidence before this court

to determine whether Lawler properly notified Bradley of its failure to pay any royalties or of its intent to terminate the license agreement.  Thus, inasmuch as we have reversed the district court's interpretation of the term "such as," the result being that the contested cabinets and piping products do not qualify under the alternative royalty provision, and we do not know the royalty amount that should have been paid, we consider the best course is to remand the case to the district court to determine the proper remedy, viz., whether the contested piping and cabinet products should bear a royalty under any provision other than the alternative royalty provision,[*] and the royalties due under such provision, and whether Lawler is entitled to terminate the agreement and whether it properly did so.

## CONCLUSION

Accordingly, we <u>reverse</u> the district court's interpretation of the license agreement and <u>remand</u> to determine the status of the license agreement and to calculate royalties.

<u>REVERSED</u> and <u>REMANDED</u>

---

[*] Our holding that Bradley's piping and cabinet products do not qualify under the "alternative royalty provision" only excludes Bradley's products from that part of Section 3.1 of the license agreement that applies to Licensed Units "in combination in another product such as an emergency shower or eyewash."  Royalty provisions in Section 3.1, other than the alternative royalty provision, may, and likely do, apply to Bradley's products.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1533

LAWLER MANUFACTURING CO., INC.,

Plaintiff-Appellant,

v.

BRADLEY CORPORATION,

Defendant-Appellee.

and

KEVIN B. KLINE,

Defendant.

Appeal from the United States District Court for the Southern District of Indiana in Case No. 1:98-CV-1660, Chief Judge Larry J. McKinney.

Mayer, Circuit Judge, dissenting.

I respectfully dissent. The license agreement between Lawler Manufacturing Co., Inc. ("Lawler") and Bradley Corporation ("Bradley") is a concise and straightforward document. Section 3.1 of the agreement provides that when Bradley sells stand-alone valves, royalties will be based upon the sales price of those valves. If, on the other hand, Bradley sells patented valves "in combination in another product such as an emergency shower or eyewash," royalties will be based on the average price of the stand-alone valves and not on the price of the combined assembly.

As the district court properly concluded, there is nothing ambiguous in the language of the license agreement. The agreement states plainly that when licensed

valves are sold in combination products "such as" emergency showers or eyewashes, the royalty will be based on the average price of the stand-alone valves and not on the price of the combined assembly. The ordinary and customary meaning of the phrase "such as" is "for example" and there is nothing in the license agreement which would support a different conclusion. See H. Ramsey Fowler, The Little, Brown Handbook 597 (3d ed. 1986) ("When you are giving examples of something, use 'such as' to indicate that the example is a representative of the thing mentioned."); The American Heritage Dictionary 1215 (2nd college ed. 1982) (First definition of "such as" is "for example."); see also Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) (concluding that the use of the words "such as" and "including" in the Fair Use Act were employed "to indicate the 'illustrative and not limitatitive' function of the examples given"); United States v. Doubet, 969 F.2d 341, 346 (7th Cir. 1962) (concluding that the items listed after the phase "such as" were used "by way of example rather than limitation"). Thus, emergency eyewashes and showers are examples of combination products, but they are not the only combination products covered by section 3.1 of the licensing agreement. Piping and cabinets, like emergency showers and eyewashes, are sold "in combination" with Lawler's patented valves. As such, they clearly fall within the scope of section 3.1.

The majority apparently believes that piping and cabinets are so dissimilar from emergency showers and eyewashes that they must fall outside the plain language of the license agreement. Ante at 5-8. I disagree. Like emergency showers and eyewashes, cabinets and piping are plumbing products that use the licensed valves as only one of their components. Indeed, Lawler's national sales manager testified that an

emergency shower and eyewash was essentially a licensed valve connected to "piping that's screwed together that includes a shower head." Furthermore, in its brief Lawler states that the cabinets in question are just "basic metal boxes." Since an emergency shower or eyewash is simply a patented valve connected to piping and a shower head, it is not fundamentally dissimilar from either a valve sold with piping or a valve sold with piping and a basic metal box. Accordingly, piping and cabinets fall squarely within the language of section 3.1.

Before the district court, neither party argued that the license agreement was ambiguous. Indeed, the district court specifically stated that "[n]either party argues that the 'such as' clause of the License Agreement is ambiguous, nor does the Court find it ambiguous." Lawler Mfg. Co., Inc. v. Bradley Corp., No. 1:98-cv-1660-LJM-JMS, slip. op. at 23 (S.D. Ind. June 22, 2007). Since Lawler did not argue that the license agreement was ambiguous to the district court, it should not be allowed to do so here.

Where a contract, "such as" this one, is on its face unambiguous, it should be interpreted in accord with the plain meaning of its terms. See Schmidt v. Schmidt, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004) (Under Indiana law, courts do not look beyond the "four corners" of a document to interpret an unambiguous contract). The district court properly declined "Lawler's invitation to rewrite the parties' Agreement." Lawler, slip op. at 23. So should this court. I would affirm.