## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 14 2020, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEY FOR APPELLEE

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bradley Crawford, | May 14, 2020 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 19A-DC-2152 |
| v. | Appeal from the Pulaski Circuit Court |
| Stephanie M. Crawford, | The Honorable Mary C. Welker, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 66C01-1703-DC-10 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Bradley Crawford (Husband), appeals the trial court's Order in favor of Appellee-Respondent, Stephanie Crawford (Wife), holding that a Joint Revocable Living Trust (Trust) amended the parties' Premarital Agreement.[1].

We affirm.

# ISSUE

Husband raises three issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court erred by determining that the Trust amended the parties' Premarital Agreement.

# FACTS AND PROCEDURAL HISTORY

On March 22, 2002, a day before their wedding, Husband instructed Wife to go to his lawyer's office to sign the Premarital Agreement setting forth their individual assets and providing that neither had any interest in the property of the other during their marriage, divorce, or death. Attached to the Premarital Agreement was an exhibit, listing all of Husband's and Wife's premarital assets. Husband's assets included a retirement account of $520,000, an Edward Jones

---

[1] The parties titled the Premarital Agreement as an antenuptial agreement. For over a century, Indiana courts have referred to premarital agreements as "antenuptial" agreements. *See McNutt v. McNutt*, 116 Ind. 545, 19 N.E. 115 (1888). They have continued to do so even after the Act's codification. *See Schmidt v. Schmidt*, 812 N.E.2d 1074 (Ind. Ct. App. 2004). However, in the Act, the term "premarital agreement" is used throughout. *See* Ind. Code § 31-11-3-2. Because the Act is applicable to this case, we will use the term premarital agreement throughout this opinion.

account of $220,000, a checking account with a balance of $100,000, a house with $150,000 in equity, a dental practice valued at $50,000, two trucks collectively valued at $37,000, two boats collectively valued at $20,000, furnishings with an estimated market value of $3,000, and a sixteen acre tract of land in Fulton County valued at $13,000. Wife's assets included a house with $15,000 in equity, furniture valued at $1,000, a tanning bed valued at $1,000, and jewelry valued at $5,000.

[5]    At the time the parties got married, Wife was seven months pregnant and was working at Husband's dental practice in Pulaski County, Indiana. Wife eventually sold her house and the proceeds were deposited into Husbands' dental practice checking account. Wife's other assets such as the tanning bed and furniture were lost in a fire. Twelve years later, on October 21, 2014, the parties jointly executed the Trust, identifying Husband and Wife as trustors, co-trustees, and lifetime beneficiaries, and funding the Trust with three parcels of land, and all their tangible and intangible personal property. At the time the Trust was executed, Husband had retained most of his premarital assets.

[6]    In January 2017, the parties separated, and on March 17, 2017, Husband filed a petition for dissolution of the marriage and sought to enforce the Premarital Agreement. On September 29, 2017, Wife filed a motion for summary judgment, seeking the exclusion of the parties' Premarital Agreement from the dissolution proceedings. Wife argued that she was unconscionably disadvantaged by the Premarital Agreement since she was unaware of what she had executed. Secondly, Wife claimed that the Trust revoked or amended the

Premarital Agreement since it was executed later in time and contrary to the intent of the Premarital Agreement as it included premarital property in the Trust. Husband filed his response to Wife's motion on December 1, 2017, to which Wife responded in turn. On December 5, 2017, the trial court denied Wife's summary judgment motion after determining that there were genuine issues of material fact, and it scheduled a hearing to determine the validity of the Premarital Agreement and the effect of the Trust on the dissolution proceedings. Following a hearing, on May 3, 2018, the trial court entered the following Order:

> The [c]ourt initially reads [the Premarital Agreement] and [the] Trust and confines itself to the four corners of those documents. It is as though [the Premarital Agreement] and [the] Trust were created in a vacuum twelve years apart. [The Premarital Agreement] by its language acknowledged that the relationship between [Husband] and [Wife] might not be cemented for life: "This agreement is not created for any purpose which would create disharmony or cast doubt on the love and affection the parties have for each other, but only to define property rights during the marriage in the event of a Dissolution of Marriage or [D]eath." Attached to [the Premarital Agreement] were two handwritten pages listing various items of property and certain debts. Those two pages are consolidated into one page and attached to this order as "Exhibit A." The attachments include among other items as assets[,] [Husband's] retirement account of $520,000.00, an Edward Jones account of $220,000.00, and a checking account of $100,000.00.

> Twelve years later [the] Trust was created by the parties. It does not acknowledge [the Premarital Agreement]. It reflects unity and a cemented relationship, even if it were created for estate planning purposes. Both [Husband] and [Wife] are designated as

trustors, co-trustees, and lifetime beneficiaries. As lifetime beneficiaries, they are designated as "recipients of the trust benefits for and during their natural lives . . ." They attached as their "Exhibit A" property listed as the initial trust property. The [c]ourt now copies that list and attaches a copy of it to this [O]rder as its "Exhibit B." [The] Trust provides "that property (as listed in their Exhibit A) shall be held and disposed of by Co-Trustees on the terms stated in this Trust." Their Exhibit A on its face appears exhaustive. There is no evidence that any property was otherwise reserved. [The Premarital Agreement] attachments detailed three types of accounts as intangible personal property. [The] Trust's attachment lists intangible personal property without specificity as "All bank account, cash monies, stocks and bonds." There is no basis for the [c]ourt to believe from the four corners of [the] Trust that it would not include the Edward Jones account and retirement account within the list of "All bank accounts, cash monies, stocks and bonds." Twelve years earlier those two accounts were in existence, and there is no evidence of stocks and bonds apart from those two accounts. The [c]ourt concludes that those two accounts were within the definition of "All bank accounts, cash monies, stocks and bonds." The only exception the [c]ourt would believe applicable would be the status of the accounts if, by their very nature, they were covered by a law of exclusion such as exists with military pensions.

The court finds and concludes that [the] Trust trumps [the Premarital Agreement], being later in time, and totally contrary in philosophy and intent of [the Premarital Agreement], reflecting a unity of trust, understanding, and joint control. Pulling these separate assets into a trust of unified control is comparable to a separate asset such as a separately titled account of insurance proceeds being comingled and re-titled jointly, which would pull it into the marital estate for consideration. [The] Trust is in essence a written agreement signed by both parties to Agreement which amends or revokes [the Premarital

Agreement] as recognized in Indiana Code [section] 31-11-3-7. [The Premarital Agreement] recognized and preserved individual estates as they existed at the time of the marriage, both during the lifetimes of the parties and upon their deaths. Twelve years later [the] Trust pulled those separate estates into [the] Trust and essentially provided for a present joint interest with joint control in all assets of the parties and a future interest in one-half of all of the parties' assets upon the death of one of them, with the power to dispose of those assets constituting that one half interest during the lifetime of that surviving party. Article V of [the] Trust appears to recognize that "pension, profit sharing, or Keogh benefits, of any Individual Retirement Accounts benefits, or of any other retirement plan benefits," may be part of [the] Trust. Because of the conclusion that all of the property of the parties is therefore a part the marital estate for disposition, which includes the retirement and, Edward Jones accounts, the validity of [the Premarital Agreement] becomes moot. Of course, all of the considerations for disposition remain as would exist in any dissolution of marriage case.

It is, therefore, ordered, adjudged, and decreed that all of the assets included in the Joint Revocable Living Trust (Trust) of [Husband] and [Wife] dated October 21, [2014], including the retirement account and the Edwards Jones account, be, and they hereby are, included in the marital estate, subject to all of the considerations for disposition remaining applicable.

(Appellant's App. Vol. II, pp. 193-96). On May 17, 2018, Husband filed a motion for interlocutory appeal and Wife filed her response on May 23, 2018. The trial court certified the ruling on Husband's motion, but we denied his motion. On January 24, 2019, Husband filed a motion with the trial court to reconsider its Order that the Premarital Agreement was invalid since the Trust amended it. During the final hearing, the trial court denied Husband's motion

to reconsider. On April 29, 2019, the trial court issued an order dissolving the parties' marriage. Husband subsequently filed a motion to correct error on the trial court's order reaffirming that the Trust invalidated the Premarital Agreement by the amendment. Husband's motion was subsequently denied.

[7] Husband now appeals. Additional information will be provided as necessary.

# DISCUSSION AND DECISION

[8] Husband appeals from the trial court's denial of his motion to correct error. Generally, we review a trial court's ruling on a motion to correct error for an abuse of discretion. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. However, to the extent the issues raised on appeal are purely questions of law, our review is *de novo*. *Id*. In his motion to correct error pursuant to Indiana Trial Rule 59, Husband requested that the trial court vacate its prior ruling that the Premarital Agreement was invalid since the Trust amended it.

[9] We begin our analysis by noting that premarital agreements are legal contracts by which parties entering into a marriage relationship attempt to settle the interest of each party in the property of the other during the course of the marriage and upon its termination by death or other means. *Boetsma v. Boetsma*, 768 N.E.2d 1016, 1020 (Ind. Ct. App. 2002), *trans. denied*. "To interpret a contract, a court first considers the parties' intent as expressed in the language of the contract." *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004). "The court must read all of the contractual provisions as a whole to

accept an interpretation that harmonizes the contract's words and phrases and gives effect to the parties' intentions as established at the time they entered the contract." *Id.* If the terms of the contract are unambiguous, "the intent of the parties must be determined from the four corners of the document." *Id.*

[10] Wife maintains that the Trust, as executed, amended the Premarital Agreement. Indiana Code section 31-11-3-7 provides that after marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the parties. In the present case, when the parties executed the Premarital Agreement, they attached two handwritten pages listing all of their individual premarital assets. Husband's premarital assets included a retirement account of $520,000, an Edward Jones account of $220,000, a checking account with a balance of $100,000, a house with $150,000 in equity, a dental practice valued at $50,000, two trucks collectively valued at $37,000, two boats collectively valued at $20,000, furnishings with an estimated market value of $3,000, and a sixteen acre tract of land in Fulton County valued at $13,000. Wife's premarital assets included a house with $15,000 in equity, furniture valued at $1,000, a tanning bed valued at $1,000, and jewelry valued at $5,000.

[11] Twelve years into their marriage, Wife had sold her house and the proceeds were deposited into Husbands' checking account. Wife's other assets such as the tanning bed and furniture were lost in a fire. Husband had retained most of his premarital assets, and the parties had jointly acquired other assets during their marriage. When the parties executed the Trust, they initially funded the Trust with three parcels of land which included Husband's sixteen acre tract of

land located in Fulton County, and they also transferred to the Trust, their tangible and intangible personal property which included all of the parties' bank accounts, cash, stocks, and retirement accounts.

[12] Turning to the question of whether the Trust was an amendment of the Premarital Agreement, while the parties did not specifically reference the Premarital Agreement in the Trust, or indicate the Trust was an amendment of the Premarital Agreement, the Trust, as executed, was contrary to the philosophy and intent of the Premarital Agreement, which was to preserve the parties' premarital assets during their marriage, divorce, or death. In particular, the Trust pulled the parties' separate premarital estates into the Trust, and it provided the parties with joint and equal control over all assets transferred into the Trust. We agree with Wife's position that pursuant to Indiana Code section 31-11-3-7, the Trust, which was a subsequent written agreement, signed by both parties, appears to have unilaterally disavowed the Premarital Agreement, and therefore the Trust was an amendment of the Premarital Agreement. Here, we find no abuse of the trial court's discretion, and we therefore affirm the trial court's denial of Husband's motion to correct error.

## CONCLUSION

[13] For the foregoing reasons, we hold that the trial court did not abuse its discretion by determining that the Trust amended the Premarital Agreement.

[14] Affirmed.

[15] Mathias, J. and Tavitas, J. concur