William A. BRACKIN, Appellant–Petitioner,

v.

Peggy J. BRACKIN, Appellees–Respondent.

No. 05A02–0803–CV–218.

Court of Appeals of Indiana.

Sept. 18, 2008.

Robert G. Forbes, Forcum, Forbes, Danielson & Danielson LLP, Hartford City, IN, Attorney for Appellant.

Ana M. Quirk, Quirk, Rivers & Hunter, Muncie, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issue*

William Brackin appeals the trial court's distribution of property pursuant to its dissolution of William's marriage to Peggy Brackin. Specifically, William argues that the trial court erred in awarding Peggy a 2006 Buick Lucerne automobile ("Lucerne"). Concluding that the evidence clearly and convincingly establishes that William and Peggy intended the Lucerne to be a gift to Peggy from William, we affirm.

## Facts and Procedural History

William and Peggy were married on September 29, 2004. On September 28, 2004, they executed a prenuptial agreement (the "Agreement"). The pertinent portions of the Agreement for purposes of this opinion are:

### Section Six

### Jointly Held Assets

In the event of dissolution, divorce or termination of the Parties' marriage in any manner other than the death of one of the Parties, all jointly held assets shall be apportioned between the Parties in accordance with each Party's contribution to the acquisition of the joint assets and taking into account the contributions of the Parties to these assets during marriage as well as the dissipation of these assets during the marriage for marital and other expenses. It is the intention of the Parties that, in the event their marriage shall be terminated in any manner except the death of one of the Parties, the Parties shall be restored as closely as possible to the respective financial positions they held immediately prior to marriage adjusted by the marital contributions and dissipations of each Party.

### Section Seven

### Interspousal Gifts and Bequests

In addition to any provisions herein for the benefit of either [P]arty, the Parties may make gifts or testamentary bequests. Either Party may make any gift, in any amount, to his or her respective spouse, and that gift shall become the separate property of the donee spouse. Either Party may make testamentary bequests in his or her Will, which bequests, upon receipt from settlement of the estate, shall become the separate property of the beneficiary spouse.

Appellant's Appendix at 35–36.

Prior to the marriage, Peggy owned a Ford Taurus automobile ("Taurus"), which she gifted to her grandson. Peggy testified that William told her to give the Taurus to her grandson and he would buy her a car. After Peggy gave the Taurus to her grandson, and prior to the marriage, William purchased a 2004 Pontiac Grand Prix automobile ("Grand Prix"), telling Peggy that it was her car. William titled the Grand Prix in his name only. Peggy drove the Grand Prix on a regular basis; however, she did not consider it to be her car because her name was not on the title certificate. During the marriage, William traded in the Grand Prix and purchased the Lucerne. William paid for the Lucerne entirely with his own funds but titled the vehicle in both his and Peggy's names. William drove the Lucerne home, went into the house, and said, "Peggy, come out and see the car I bought you." Transcript at 26, 43–44.

Peggy primarily drove the Lucerne. William sometimes drove the Lucerne alone or with Peggy as a passenger. On October, 24, 2007, during an argument with Peggy regarding their pending dissolution, William took a hammer and repeatedly struck the door handle of the Lucerne until the handle fell off. Peggy has since had the handle replaced at her own expense.

On September 13, 2007, William filed a petition for dissolution of marriage. On November 13, 2007, the trial court held a final hearing on the petition and heard evidence and testimony regarding the distribution of property. On November 15, 2007, the trial court issued its dissolution decree. In awarding the Lucerne to Peggy, the trial court made the following specific findings:

a. At the time of the marriage to [William], [Peggy] owned and operated a Ford Taurus automobile.[1] At the urging of [William], [Peggy] gifted the Ford Taurus automobile to her grandson. [Peggy] had the primary use and possession of [William's] 2004 Grand Prix, until [William] traded in the 2004 Grand Prix for the 2006 Buick Lucerne in the fall of 2006. Following the purchase of the 2006 Lucerne[, William] presented it to [Peggy], in the presence of [Peggy] and [Peggy's] sister-in-law, with the comment "come out and see the car I bought you."

b. Although the parties had executed a pre-marital agreement, and kept their own individual property separately titled after their marriage, [William] had the Buick Lucerne titled in his name, as well as in the name of [Peggy]. The court considers this further evidence of intent to make a gift of the Lucerne to [Peggy]. Additionally, section 7 of the pre-marital agreement authorizes the gifting of property between the parties during their marriage. [William's] contention that joint title was merely to facilitate a testamentary transfer in the event [William] succumbed to a cancer ailment, the court finds unpersuasive. [William] could have titled what he considered to be his own property in his own name, and provided for a testamentary transfer in his last will and testament.

c. Most persuasive to the court, is the uncontroverted evidence of what occurred between [William] and [Peggy] during an argument the two were having some weeks prior to the final hearing in [sic] dissolution in this cause. During the course of the argument, [William] took a hammer and struck the door handle of the vehicle, breaking it off in the process. Over $100.00 in damage was occasioned the vehicle by [William's] use of the hammer on the door handle. It lacks the ring of truth for [William] to assert that in the exercise of an outward act of anger against [Peggy], for what he perceived to be some insult by [Peggy], that [William] would take a hammer and damage what he considered to be his own property. Such an explanation defies human nature and the life experiences of the court. When someone is getting even by means of damaging property, they damage the property of their antagonist, not their own. Accordingly, the court finds that [Peggy] has demonstrated by a preponderance of the evidence that [William] and [Peggy] intended the 2006 Lucerne to be a gift to [Peggy] from [William]. The automobile was tendered as a gift by [William]; accepted as a gift by [Peggy]; and, [sic] used primarily by [Peggy] thereafter.

Appellant's App. at 7–8. William filed a motion to correct errors on December 18, 2007, which the trial court denied after a hearing. William now appeals.

*Discussion and Decision*

William argues the trial court erred when it determined that William gave the Lucerne to Peggy as an inter vivos gift and awarded the Lucerne to Peggy in the division of property pursuant to section seven of the Agreement. William further argues that the Lucerne should have been

---

1. We recognize the record indicates that Peggy had gifted the Taurus to her grandson and William purchased the Grand Prix for her to drive prior to the marriage.

treated as jointly owned property and, because he had personally contributed the entire purchase price, awarded to him pursuant to section six of the Agreement.

## I. Standard of Review

Where, as here, the trial court enters findings of fact and conclusions thereon, we engage in a two-step review process. First, we determine whether the evidence supports the findings. *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind.Ct. App.2004). Second, we determine whether the findings support the judgment. *Id.* Only when the record contains no facts to support the findings, either directly or by inference, will we hold the findings to be clearly erroneous. *Id.* A judgment is clearly erroneous only when the trial court applies the wrong legal standard to the properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

■■■ Antenuptial agreements are legal contracts entered into prior to marriage that attempt to settle the interest of each spouse in the property of the other, both during the marriage and upon its termination. *Rider v. Rider*, 669 N.E.2d 160, 162 (Ind.1996). We will uphold antenuptial agreements as valid contracts so long as they are entered into freely and without fraud, duress, or misrepresentation, and are not unconscionable. *Id.*

Here, the Agreement provides instruction to the trial court regarding the distribution of property upon dissolution. Therefore, the trial court first had to determine whether the Lucerne should be treated as joint property falling under section six of the Agreement or an inter vivos gift from William to Peggy falling under section seven of the Agreement.

## II. Inter Vivos Gift

■■■ A valid inter vivos gift occurs when each of the following is present: (1) the donor is competent to make the gift; (2) the donor intends to make a gift; (3) the gift is completed with nothing left undone; (4) the property is delivered by the donor and is accepted by the donee; and (5) the gift is immediate and absolute. *Fowler v. Perry*, 830 N.E.2d 97, 105 (Ind. Ct.App.2005). Once delivery and acceptance of an inter vivos gift occurs, the gift is irrevocable and a present title vests in the donee. *Id.*

■■■ There is no evidence in the record suggesting that William was not competent to make a gift. Similarly, there is no evidence to suggest that the gift was incomplete or conditional. It reasonably can be inferred that William effectively delivered the Lucerne to Peggy and that she accepted the gift because Peggy regularly drove the Lucerne and considered it her own. Additionally, William's statement, "Peggy, come and see the car that I bought for you," supports an inference that William intended to make a gift; however, William's decision to title the Lucerne in both his and Peggy's names and his occasional use of the Lucerne tends to defeat such an inference. To make a valid inter vivos gift, there must be both an intention to give and a stripping of the donor of all dominion or control over the given thing and a change of title must be irrevocable. *Kraus v. Kraus*, 235 Ind. 325, 329–30, 132 N.E.2d 608, 610–11 (1956) (quoting *Bulen v. Pendleton Banking Co.*, 118 Ind.App. 217, 230–31, 78 N.E.2d 449, 455 (1948)). Whether a person can make an inter vivos gift of an automobile where his or her name remains on the certificate of title after the gift has been delivered is an issue of first impression in Indiana.

The Restatement (Third) of Property: Wills & Other Donative Transfers states:

The delivery of [personal property subject to registered title] to an intended donee ... with donative intent is effective as between the donor and the donee to place the ownership of the personal property in the donee.... The donor's failure to follow the specified procedure for making the transfer casts doubt on the claim of donative intent. Consequently, the donee must establish donative intent by clear and convincing evidence. If the donee carries that burden of proof, the donee may require the donor or the donor's successors to do whatever is necessary to have the title properly registered in the donee's name. § 6.2 cmt. i (2003). Thus, under the Restatement, it is the delivery of the automobile itself with donative intent that conveys ownership. Although, the failure of the donor to convey the certificate of title casts doubt on the donor's intent, the donee may overcome such doubt by demonstrating some other clear and convincing evidence of donative intent. The Restatement provides the illustration of a mother physically delivering an automobile to her son with the statement, "You now own the automobile." *Id.* at § 6.2 cmt. i, illus. 10. The mother's statement establishes donative intent by clear and convincing evidence such that the son now owns the automobile and may require his mother to register the title in his name. *Id.*

Several of our sister states with transfer of title statutes analogous to our own [2] have reached a similar conclusion regarding whether delivery of an automobile without transfer of certificate of title constitutes a valid inter vivos gift.

In *O'Fallon v. O'Fallon ex rel. Ngar,* 341 Ark. 138, 14 S.W.3d 506 (2000), a father purchased a 1996 Chevrolet Camaro after telling several people that he was buying a car for his son. After purchase, the father drove the Camaro to his son's house and gave him the keys. The son drove the Camaro on a regular basis. The father drove the Camaro only once when his own truck was in disrepair. However, the father retained his own name on the certificate of title and insured it with himself listed as the only driver. The Supreme Court of Arkansas held the trial court did not err when it determined that the father had made a valid inter vivos gift to the son. *Id.* at 509. The court reasoned "the intent of the donor can negate the fact that actual title was not transferred." *Id.* at 508 (quoting *Beatty v. USAA Cas. Ins. Co.,* 330 Ark. 354, 954 S.W.2d 250 (1997)). The court found sufficient evidence in the record to establish the father's donative intent. *Id.* at 509.

Similarly, in *In re Baumstimler's Estate,* 159 Kan. 316, 153 P.2d 927 (1944), a priest purchased an automobile for his housekeeper, Mary. Mary picked out the automobile. After purchasing the automobile, the priest gave the keys to Mary and routinely referred to it as "Mary's car." However, the priest retained his own name on the certificate of title and made all payments toward the financed purchase price. The Supreme Court of Kansas found "a clear and unmistakable intention" on the part of the priest to make an inter vivos gift of the automobile to Mary. *Id.* at 928. The court held that the gift was complete at the time of delivery to Mary and that the failure to comply with title and registration statutes did not affect the validity of the gift. *Id.* at 930.

Conversely, the Appellate Court of Illinois held "the intention to make a gift is not effective until the gift is made by [an] act that amounts to actual or symbolic

---

**2.** Ind.Code § 9–17–3–3(a). Compare to Ark. Code Ann. § 27–14–901(d); Kan. Stat. Ann. § 8–135(c)(6); 625 Ill. Comp. Stat. 5/3–112(a).

delivery." · *Hall v. Ill. Nat'l Ins. Co.,* 34 Ill.App.2d 167, 180 N.E.2d 695, 697 (1962). In *Hall,* a father intended to make an inter vivos gift of an automobile to his son. To that end, he prepared an assignment of title with a notary and prepared an application to register the license plates in his son's name. After having a conversation with his son, however, the father applied for license plates in his own name and put the title assignment paperwork in the glove box of the car. The father never delivered the car to his son. The court held that there was no evidence of a completed gift and therefore, title did not pass from the father to the son. *Id.* at 697–98.

■ Indiana law parallels these other states and the Restatement with regard to the relationship between the certificate of title and ownership. "Certificate of title is not itself proof of ownership or legal title to the vehicle. A person may have legal title in a vehicle even though he does not possess a certificate of title." *Pekin Ins. Co. v. Charlie Rowe Chevrolet, Inc.,* 556 N.E.2d 1367, 1370 (Ind.Ct.App.1990) (citations omitted). Rather, certificates of title of automobiles are indicia of ownership and control. *Royal Indem. Ins. Co. v. Shue,* 134 Ind.App. 322, 327, 182 N.E.2d 796, 799 (1962). Standing alone, a certificate of title raises an inference of legal title in the holder subject to contradiction by other evidence. *Id.* Still, such certificates do not convey title and they are not conclusive proof of title in the one who is therein designated as the owner. *Champa v. Consol. Fin. Corp.,* 231 Ind. 580, 592, 110 N.E.2d 289, 294 (1953).

■ In light of the inference of legal title created by a certificate of title under existing Indiana law, we adopt the Re-statement approach. Where a donor otherwise meets the requirements of an inter vivos gift of an automobile, but retains his or her own name on the certificate of title, a presumption arises that the donor did not have donative intent to make a gift. The donee can overcome this presumption by demonstrating clear and convincing evidence of the donor's donative intent.

■ Under the Restatement approach, clear and decisive words of gift, "You now own the automobile," establish clear and convincing evidence of donative intent. Restatement (Third) of Property: Wills & Other Donative Transfers § 6.2 cmt. I, illus. 10. We refrain from creating a bright line rule that words of gift, standing alone, automatically rebut the presumption against donative intent where the donor retains his or her name on the certificate of title. Rather, this court must consider the totality of the circumstances surrounding the gift in question to determine the existence of donative intent. However, we hold, as a matter of law, that where, as here, there is uncontroverted evidence of clear and decisive words of gift and an absence of any evidence to negate donative intent, such evidence clearly and convincingly establishes donative intent despite the presumption to the contrary created by the donor retaining his name on the certificate of title.

The evidence in this case is uncontroverted that William gave the Lucerne to Peggy with the words, "Come out and see the new car I bought you."; that Peggy primarily drove the Lucerne for her personal use; that William drove the Lucerne only occasionally or while the two were riding in the Lucerne together; and that William damaged the vehicle in a fit of angry retaliation directed at Peggy [3]. Wil-

---

**3.** We agree with the trial court that this latter behavior is not consistent with a belief by William that he owned the vehicle.

liam presented no evidence to negate his donative intent aside from his name continuing to appear on the certificate of title. Therefore, we find, as a matter of law, the evidence clearly and convincingly establishes William's donative intent and that William and Peggy intended the Lucerne as a gift to Peggy from William.

### Conclusion

Accordingly, the trial court did not err in awarding the Lucerne to Peggy.

Affirmed.

NAJAM, J., and MAY, J., concur.