**Espiridion ESTUDILLO, Appellant–Respondent,**

v.

**Maria E. ESTUDILLO, Appellee–Petitioner.**

No. 91A02–1102–DR–97.

Court of Appeals of Indiana.

Oct. 18, 2011.

Rehearing Denied Nov. 21, 2011.

Robert H. Little, Brookston, IN, Attorney for Appellant.

Lucille P. Uttermohlen, Monticello, IN, Attorney for Appellee.

## MEMORANDUM DECISION

VAIDIK, Judge.

### Case Summary

Espiridion Estudillo ("Husband") appeals the trial court's property division in his dissolution proceedings with Maria Estudillo ("Wife"). Husband argues that the trial court erred by dividing the marital property unequally, including non-marital property in its distribution, and by failing to recognize his obligation to repay loans made to him by his brothers. We affirm.

### Facts and Procedural History

Husband and Wife were married in January 2000. Husband and Wife have two children together as well as children from prior relationships. Throughout the marriage, both parties worked at Indiana Packers Corporation.

The parties purchased two properties during their marriage. In April 2002, the parties purchased a vacant lot at 717 South Bluff Street in Monticello, Indiana. The property was purchased with proceeds from a personal injury settlement Husband received in December 2001. The remaining settlement funds were used to purchase construction equipment to build a residence on the lot. Building materials were acquired through a loan in both parties' names and two credit cards. The Bluff Street property was titled in Husband's name only.[1]

In November 2002, the parties purchased a residence at 502 Prairie Court, also in Monticello. The parties obtained mortgages and lines of credit against this property, which they used to continue building a residence at the Bluff Street address. A portion of this debt was incurred in both parties' names, and another portion was incurred in Husband's name alone. Like Bluff Street, the Prairie Court property was titled in Husband's name only.[2]

In April 2009, Husband transferred title to the Bluff Street property to his brother, Artemio.[3] In May 2009, Husband transferred title to the Prairie Court property to his adult daughter from a prior relationship. Two months later, Wife filed a petition for dissolution. A hearing was held in July 2010. In October 2010, the trial court entered a final decree of dissolution, which provides in pertinent part:

6. Before the parties' marriage, the Husband purchased a parcel of real estate located at 605 Turpie Street, Monticello, White County, Indiana. The Husband transferred a one-half (1/2) legal interest in the title to this property to his brother, Jose [Estudillo] ... the brother Jose transferred his legal interest to their other brother, Luis [Estudillo]. The brother Luis [Estudillo] subsequently died. The Husband has continued to treat the real estate as his own by leasing the premises and collecting rent from tenants for its use. ... At the time of trial, the parties agreed that the property located at Turpie Street, Monticello, White County, Indiana, was worth $49,600. However, the Wife testified that she makes no claim against the Turpie Street real estate.

11. On May 1, 2009, the Husband borrowed $14,000.00 from his 401(k) Retirement Savings Plan maintained by him through his employment at Indiana Packers Corporation. In addition, the Husband claims that his brothers, Ar-

---

1. At the time of trial, the value of the Bluff Street property was $102,800.

2. At the time of trial, the value of the Prairie Court property was $93,800.

3. Artemio transferred title to the Bluff Street property back to Husband less than one week after Wife filed her petition for dissolution.

temio and Mario[,] have loaned him vast sums of money.... [T]he Husband has offered no proof that the sums he claims are due to his brothers are actually owed to them.

12. The Wife testified she returned home from work one evening in May, 2009 and she was advised by the Husband that they had been robbed. She was told that the sum of $500 was taken from its hiding place in a dresser drawer. Nothing else in the drawer had been disturbed. In addition, she ascertained that her jewelry had been removed from its jewelry box. She found one of the boxes that had contained part of her jewelry in the Husband's truck. Several days before the alleged theft, the Husband had removed his items from the Wife's jewelry box. In addition, the Husband mentioned the possibility that the jewelry could be in the possession of a relative, and that the relative would probably be willing to return it to the parties for money. The parties did not call the police to report the theft, nor were the parties able to place a value on the missing jewelry.

13. The Husband's bank records indicate that approximately $64,500.00 over his Indiana Packer's wages was deposited in his account between February 2009 and July 2010. The Husband maintains that his brother Artemio loaned him the money. The clerk copies he tendered in support of this assertion were drawn from an account in Artemio's name at Lafayette Bank & Trust. The checks were issued in consecutive numbers to the Husband. This would indicate that the brothers maintained the account for the specific purpose of trying to conceal assets. This finding is supported by the fact that the brother Artemio is an illegal alien who is employed at Wrede and Sons as a common laborer, and that Artemio would not have access to the funds to loan to [Husband]. In addition, the mobile home, whose sale the Husband claimed could have provided the funds was sold well after the loans claimed by the Husband were supposedly made.

17. I.C. 31–15–7–5 provides that an equal division of marital property should be assumed to be just. Neither party rebutted this presumption.

18. In dividing the property, the Court should consider the contributions each party made to its acquisition, and how the parties conducted themselves regarding its disposition or dissipation.

19. Dissipation of marital assets occurs when one of the parties disposes of marital property in a manner that does not benefit the marriage or was made for a purpose entirely unrelated to the marriage. The timing of the transaction is such that if it is clear that the disposing party means to diminish the value of the property in anticipation of the divorce; whether the expenditure was excessive or de minimis; and whether the dissipating party intended to hide, deplete, or divert the marital asset. *Hardebeck v. Hardebeck*, 917 N.E.2d 694 (Ind.App. 2009).

20. The Husband herein transferred two (2) parcels of real estate in May of 2009, approximately two (2) months before the parties separated. He admitted that he made these transactions to keep the Wife from sharing in their value. He had hoped that transferring the Prairie Court property would take that parcel of real estate out of the Court's jurisdiction, and hence, its disposition.

21. In addition, the Husband transferred the Bluff Street property to his brother, Artemio, in the hope that it would be placed out of the Court's jurisdiction, and hence, from its disposition.

22. Despite the Husband's attempts to transfer the Prairie Court real estate to

his daughter, Erika, it was never his intent to make a gift of it to her. He made her leave the property because she had not paid rent to him, and he has since collected rent from other tenants.

23. The Husband has already received the value of his 401(k) withdrawal and the Wife's jewelry in that it is more likely that he secreted both assets than it is that they were stolen.

27. The Husband shall have the following as his sole and separate property and the Wife shall have no interest therein: All furniture, furnishings, household goods, jewelry, clothing, and personal effects currently in the Husband's possession; and all savings accounts, 401(k) accounts, pension plans, and money accounts maintained by the Husband in his own name. Further, the Husband shall retain any interest he currently has in the real estate located at 605 Turpie Street, Monticello, White County, Indiana, and also in the real estate located at 502 Prairie Court, Monticello, White County, Indiana. Finally, the Husband shall receive the 2004 Chevrolet Tahoe vehicle and the 2003 Chevrolet S–10 truck.

28. The Wife shall have the following as her sole and separate property, and the Husband shall have no further interest therein: all furniture, furnishings, household goods, jewelry, clothing, and personal effects currently in the Wife's possession; and all savings accounts, checking accounts, stocks, bonds, certificates of deposit, IRA accounts, 401(k) accounts, pension plans, and money accounts maintained by the Wife in her own name. Further, the Wife shall retain receive as her sole and separate property the real estate located at 717 South Bluff Street, Monticello, White County, Indiana; and a certain 2004 Chevrolet Trailblazer.

29. The Husband shall pay the following debts of the parties ... the home equity line of credit with Lafayette Bank & Trust attached as a lien against the Prairie Court real estate; the loan against the Husband's 401(k) Retirement Savings Plan; the debt owed to Industrial Federal Credit Union for the purchase of the 2004 Chevrolet Tahoe awarded to the Husband; the debt owed to CitiCard for a certain credit card account; the debt owed to Chase Bank for a certain credit card account; and all debts incurred by the Husband on his own behalf since the parties' separation in July, 2009.

31. The Wife shall pay the following debts of the parties ... Industrial Federal Credit Union for the purchase of the Wife's automobile; and all debts incurred by the Wife on her own behalf since the parties' separation in July, 2009.

Appellant's App. p. 10, 13–16, 18–19. In November 2010, Husband filed a motion to correct errors, which was denied. Husband now appeals.

**Discussion and Decision**

Husband raises two issues on appeal. First, Husband claims that the trial court erred by improperly determining the contents of the marital pot, including assets and liabilities. Second, Husband argues the trial court abused its discretion by ordering an unequal division of the marital assets.

■ According to the record before us, neither party requested findings from the trial court. Instead, the trial court directed the parties to prepare proposed findings. *See* Tr. p. 170. We therefore treat the trial court's findings as *sua sponte* findings of fact. *Piles v. Gosman,* 851 N.E.2d 1009, 1012 (Ind.Ct.App.2006).

■ *Sua sponte* findings control only the issues they cover, and a general judg-

ment will control as to the issues upon which there are no findings. *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997). When a trial court has made findings of fact, we apply a two-tier standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Id.* We will set aside findings only if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* To determine that a finding or conclusion is clearly erroneous, an appellate court's review must leave it with the firm conviction that a mistake has been made. *Id.*

■■■■ We turn now to the law governing the division of marital property, which is a two-step process in Indiana. *Thompson v. Thompson,* 811 N.E.2d 888, 912 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* First, the trial court determines what property must be included in the marital estate. *Id.* It is well established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind.Code § 31–15–7–4(a); *Webb v. Schleutker,* 891 N.E.2d 1144, 1149 (Ind.Ct. App.2008). This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Thompson,* 811 N.E.2d at 914. While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.*

■■■■ After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal split is just and reasonable. Ind.Code § 31–15–7–5. This presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

 (A) before the marriage; or

 (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) *The conduct of the parties during the marriage as related to the disposition or dissipation of their property.*

(5) The earnings or earning ability of the parties as related to:

 (A) a final division of property; and

 (B) a final determination of the property rights of the parties.

I.C. § 31–15–7–5 (emphasis added). The division of marital assets is a matter within the sound discretion of the trial court. *Webb,* 891 N.E.2d at 1153. When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. *Id.* When we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the

court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. *Id.*

## I. The Marital Pot

Husband argues that the trial court erred by including the Prairie Court property in the marital pot. He claims this property is not part of the marital estate because his adult daughter holds the title.

 Husband correctly states, "an equitable interest in real property, titled in a third-party, although claimed by one or both of the divorcing parties, should not be included in the marital estate." Appellant's Br. p. 9; *see also In re Marriage of Dall,* 681 N.E.2d 718, 722 (Ind.Ct.App. 1997). Indeed, a party to a divorce who claims that the marital estate includes an equitable interest in real property titled in a nonparty should move to join the nonparty and have the matter determined within the dissolution proceedings. *Dall,* 681 N.E.2d at 723.

 We agree that a trial court may not distribute property not owned by the parties. *See England v. England,* 865 N.E.2d 644, 649 (Ind.Ct.App.2007). However, we have held that when distributing marital property, a trial court may consider the use and occupancy of property titled in the name of a third party. *Id.*; *see also Dall,* 681 N.E.2d at 722–23 (holding that the trial court erred by including the parties' residence in the marital estate as it was owned by wife's parents; however, the court could consider the value of wife's continued dwelling in the home); *Hacker v. Hacker,* 659 N.E.2d 1104, 1111 (Ind.Ct. App.1995) (holding that the trial court properly considered husband's occupancy of a farm owned by his parents when distributing marital àssets). Use and occupancy of property owned by a third party is also relevant to distribution as it pertains to the economic circumstances of the parties at the time of dissolution under

Section 31–15–7–5. *See England,* 865 N.E.2d at 650.

 In its order, the trial court stated, "Husband shall retain *any interest he currently has* ... in the real estate located at 502 Prairie Court, Monticello, White County, Indiana." Appellant's App. p. 18 (emphasis added). This language suggests that the court did not include the Prairie Court property in the marital pot but considered Husband's interest in the property in making its distribution. Husband has a present possessory interest in the Prairie Court property for his use and enjoyment. Though he claimed to have made a gift of the property to his daughter, Husband evicted her from the property and began collecting rent from tenants living there. Husband's rent collection is relevant under Section 31–15–7–5(3) as an economic circumstance of the parties. We also note that though Husband does not hold title to the Prairie Court property, his conduct suggests he is capable of occupying the property in lieu of collecting rent, if he is so inclined. We therefore find that the trial court did not abuse its discretion in considering Husband's interest in the Prairie Court property when dividing the marital estate.

 Husband also claims that the trial court failed to identify a 2000 Chevrolet Trailblazer and a 1999 Chevrolet Camaro—as well as a third, unidentified vehicle—as titled in Wife's name. Husband claims the trial court erred by not designating these vehicles as marital property. We disagree.

 Vehicles are treated differently than real property in that we have held that certificate of title is not itself proof of ownership or legal title to a vehicle. *Brackin v. Brackin,* 894 N.E.2d 206, 212 (Ind. Ct.App.2008). Standing alone, certificate of title raises a presumption of legal title in

the holder, which is subject to challenge by other evidence. *Id.*

Wife admitted the Camaro and Trailblazer were titled in her name but testified she did not pay for them, nor were they in her possession. Tr. p. 61–64. Wife indicated that she titled the Trailblazer in her name to obtain license plates for Husband's cousin. *Id.* at 64. After the parties separated, she admitted to titling the Camaro in her name for her boyfriend. *Id.* at 66. When asked why she did this, Wife stated that these individuals were noncitizens and could not obtain registration for the vehicles on their own.

 As we have stated, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the court's disposition of the property and without reweighing evidence or assessing witness credibility. The trial court, having heard and evaluated Wife's testimony, determined that the Camaro and Trailblazer were not marital property.[4] We cannot say that the court's determination as to the status of these vehicles constitutes an abuse of discretion.

Husband also contends that the trial court erred by failing to consider his obligations to repay loans he claims were made to him by his brothers. Husband claims his brother Artemio loaned him $24,100, and his brother Mario loaned him $22,000.

At trial, Husband offered a series of sequentially numbered checks issued by Artemio to Husband as proof of the alleged $24,100 loan. When asked how Artemio had managed to provide Husband such a sizable loan in a nine-month span, working as a day laborer and supporting a wife and two children, Husband stated repeatedly that "[Artemio] works" and had recently sold his mobile home. Tr. p. 147–48. However, the court found that this mobile home was sold after Husband claimed Artemio had loaned him the money. When the court called Artemio to the stand, Husband stated that Artemio had been waiting but just left to return to work. *Id.* at 149.

The trial court concluded that Artemio could not have provided the loan as Husband claimed, stating:

> The Husband's bank records indicate that approximately $64,500.00 over his Indiana Packer's wages was deposited in his account between February 2009 and July 2010. The Husband maintains that his brother Artemio loaned him the money. The check copies he tendered in support of this assertion were drawn from an account in Artemio's name at Lafayette Bank & Trust. The checks were issued in consecutive numbers to the Husband. This would indicate that the brothers maintained the account for the specific purpose of trying to conceal assets. This finding is supported by the fact that the brother Artemio is an illegal alien who is employed at Wrede and Sons as a common laborer, and that Artemio would not have access to the funds to loan to [Husband]. In addition, the mobile home, whose sale the Husband claimed could have provided the funds was sold well after the loans claimed by the Husband were supposedly made.

Appellant's App. p. 14. As to the alleged $22,000 loan from Mario, Husband offered no documentation. Husband testified he lost the paperwork and had no copy. Tr.

---

4. We note that the third vehicle Husband references was purchased and titled in Wife's name in 2010. *See* Appellant's App. p. 122. The parties separated in 2009. We have held that a trial court is not obligated to treat a vehicle purchased after separation as a marital asset. *Hurst v. Hurst,* 676 N.E.2d 413, 416 (Ind.Ct.App.1997).

p. 127. Husband also stated that Mario was not available to testify about the loan because he lived in Mexico, where he managed a tortilla factory. *Id.* at 128.

■■■■ When the trial court asked what happened to the money from the alleged loans, Husband indicated that he spent it on bills but stated, "[I] don't keep track...." Tr. p. 101. The trial court found that Husband offered no proof of either loan obligation. To the extent that Husband argues the contrary, he merely invites us to reweigh the evidence and judge witness credibility, which we are not at liberty to do. We conclude that the trial court did not err in finding that Husband did not establish his obligation to repay these loans.[5]

Nonetheless, as it relates to Husband's alleged loan obligation to Artemio, Husband argues that the court's finding that Artemio is an illegal alien is unsupported by the record. We need not reach the issue of whether sufficient evidence exists to support the finding that Artemio was an illegal alien because the court's conclusion that the Husband did not receive a loan from Artemio is supported by other evidence in the record. Specifically, the presentation of consecutively numbered checks, issued by an individual unlikely to earn high wages by working as a day laborer, and the finding regarding the mobile home support the court's conclusion.

## II. Unequal Division of the Marital Property

Husband also argues that the trial court erred by dividing the marital assets unequally. Husband directs our attention to the court's order, which states that neither party rebutted the presumption of an equal distribution. Appellant's App. p. 15.

■■■ According to the order, Husband was entitled to any interest he possessed in the Turpie Street and Prairie Court properties at the time of distribution. He also received personal property in his possession,[6] the 2004 Chevrolet Tahoe, and 2003 Chevrolet S-10 truck. Husband was responsible for the Lafayette Bank and Trust line of credit, the loan for the Tahoe, and the balance on the Citibank and Chase bank credit cards. Husband contends this is an unequal distribution.[7] However, as the court's order indicates, when distributing marital property, a trial court should consider how the parties conducted them-

5. In his reply brief, Husband for the first time argues that the presumption of a loan should apply to the checks issued by Artemio. He argues, "if it is shown that the check was not issued to pay a debt, then the presumption arises that said check was a loan." Appellant's Reply Br. p. 5; *see also Grose v. Bow Lanes, Inc.,* 661 N.E.2d 1220, 1224 (Ind.Ct. App.1996). We decline to respond to this new argument as the purpose of a reply brief is to respond to appellee's arguments, not to raise new issues. *See* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief.").

Nonetheless, we do not find Husband's argument persuasive. In *Grose,* the presumption that checks were issued to repay a debt was rebutted and the presumption of a loan was raised where the payor stated that the funds were given as a loan, "loan" was written in the memo line of the checks at issue,

the checks were shown to be marked as loans in a check register, and the payor and payee discussed how repayment would be made. *Grose,* 661 N.E.2d at 1224. The record here is devoid of such evidence.

6. Husband claims that Wife removed furniture from the former marital residence before the parties separated, which effected a "more disparate division." Appellant's Br. p. 17. The trial court's order allowed both parties to retain the personal property in their possession at the time of dissolution. Husband offers no explanation or basis for determining that the court erred in this regard.

7. If the value of the Prairie Court property had been included in the marital estate, we estimate that Wife would have received 53% of the marital estate, while Husband would have received 47%.

selves regarding its disposition or dissipation, one of the five factors set forth in Section 31–15–7–5.

 Waste and misuse of marital assets are the "hallmarks of dissipation." *Goodman v. Goodman*, 754 N.E.2d 595, 598 (Ind.Ct.App.2001). The test for dissipation is whether the assets were actually wasted or misused. *Id.* Dissipation has also been described as frivolous or unjustified spending of marital assets, including the concealment of marital property. *Coyle v. Coyle*, 671 N.E.2d 938, 943 (Ind. Ct.App.1996). In determining whether dissipation has occurred, a court should consider: (1) whether the dissipating party had the intent to hide, deplete, or divert the marital asset; (2) whether the expenditure benefited the marital enterprise or was made for a purpose entirely unrelated to the marriage; (3) whether the transaction was remote in time and effect or occurred just before the filing of a divorce petition; and (4) whether the expenditure was excessive or de minimis. *Id.*

██ In this case, the trial court was confronted with extensive evidence that Husband dissipated and secreted marital assets. After the parties married, Wife borrowed money for the purpose of obtaining and building upon two properties purchased during the marriage. Husband nonetheless titled these properties in his name alone. Just before the parties separated, Husband transferred both properties—the bulk of the marital estate—to third parties, although title to the Bluff Street property was transferred back to Husband one week after Wife filed her petition for dissolution. Notably, Husband admitted that transfer of the Bluff Street property was an attempt to prevent Wife from sharing in its value. Tr. p. 106. The trial court did not find credible Husband's claims that the transfer of the Prairie Court property was a gift to his daughter. The court noted that Husband removed the daughter from the home because she did not pay rent, and since that time, he had received rent from other tenants who lived there. Husband stated that he "absolutely" made this transaction to prevent Wife from sharing in the property's value. *Id.*

Further evidence that Husband concealed marital property came from Wife, who testified that more than seventy pieces of jewelry were taken from her jewelry box. *Id.* at 69. Husband told her it had been stolen. However, she found a jewelry drawer, which previously held her jewelry inside the box, in Husband's truck a few days later. The trial court found it more likely that Husband had secreted Wife's jewelry than it had been stolen.

Finally, Husband earns approximately $30,000 annually, yet his bank records from February 2009 to July 2010 show deposits totaling more than $64,000 in excess of this amount. *See* Appellant's App. p. 14. Husband claimed that $46,100 was loaned to him by two of his brothers, but the court found that Husband presented no proof of these loans. When the court asked what happened to the $64,000, Husband indicated that he spent it on bills but could not provide a more specific explanation.

Despite the trial court's declaration that the presumption of an equal division had not been rebutted, it is clear the court concluded otherwise. After finding that the presumption had not been rebutted, the trial court concluded that waste and dissipation must be considered by the court in distributing marital property. The court then made numerous findings regarding Husband's dissipation of the parties' assets. We find that the trial court did not err by determining that the extensive evidence of dissipation justified

an unequal distribution of the marital property in this case.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.