**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 29 2013, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRENDA J. MARCUS**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**SOPHIA J. ARSHAD**
**VASILIA M. PANGERE**
Arshad, Pangere and Warring, LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLARENCE JOHNSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1202-DR-94 |
| | ) | |
| JUANA JOHNSON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Elizabeth F. Tavitas, Judge
The Honorable Nanette K. Raduenz, Magistrate
Cause No. 45D03-1007-DR-612

**January 29, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this dissolution case, Clarence Johnson (Husband) contends that the trial court erred in distributing the marital property to him and his former spouse, Juana (Wife). Husband argues that the trial court's findings were contrary to the evidence and law with regard to provisional payments, payment of joint tax liability, and the assignment of the debts of Wife's student loans and social security debt. Husband also challenges the ultimate distribution of the marital estate and further asserts that the trial court erred in denying his motions to continue the final hearing. Wife cross-appeals, claiming that she is entitled to appellate attorney fees.

The record reflects that the trial court used many of the figures that Husband submitted when valuing the marital assets and the amount of debt that the parties accumulated during the marriage. Moreover, the evidence supports the trial court's valuations and its distribution of the marital property to the parties. We also conclude that the trial court properly denied Husband's motions to continue the final hearing and that remand is unnecessary.

## FACTS

Husband and Wife were married on April 14, 1995. Although no children were born or adopted into the marriage, Wife had a five-year-old son from a previous relationship who lived in the household. During the course of the marriage, the parties purchased a residence, automobiles, furniture, and other items.

In 2007, the parties purchased a 2006 Dodge Caravan for Wife's disabled brother to drive. All payments made for that vehicle from 2007 through 2009 were made by

Wife's brother. However, sometime in 2010, Wife's brother was no longer able to make the payments on the vehicle. Thus, Husband and Wife repossessed the van and began making the payments. When Wife's car no longer ran, she began driving the van in May 2010. The loan balance on the vehicle when the petition for dissolution was filed was $11,694. The Kelley Blue Book value of the vehicle at the time of the hearing was $5,425. Thus, the negative equity on the vehicle amounted to $6,269.

Sometime in 2009, the parties refinanced the marital residence at a lower interest rate. The parties also incurred a home equity loan, and an appraisal was obtained in the course of that refinance, which valued the home at $117,000. The first mortgage balance as of the date of the dissolution filing was $89,523.07, and the home equity loan balance on the same date was $6,594.98. It was established and stipulated that the market value of the marital home as of the date of final hearing was $81,500. Thus, as of the date of the final hearing, there was negative equity in the marital residence in the amount of $11,823.79. The down payments for the loans concerning the marital home were paid voluntarily by Husband, either fully or partially with funds from his inheritance account with no promise of repayment by Wife.

In 2009, Wife's son began attending Indiana University in Bloomington. Later that year, the parties purchased a 2009 Chevrolet Impala as a reliable vehicle for him to use to and from school. However, the parties retained title to this vehicle in their own names. When the petition for dissolution was filed, the balance due on the loan was $20,848. However, the Blue Book value of the vehicle was $11,450.

3

During the marriage, Wife worked for several years and accumulated a Teacher's Retirement Pension with a present value of $24,115 as of the date of filing. Additionally, Wife had accumulated an ASA annuity with a balance of $2,792 as of the filing date. Wife also had an ING savings account in the amount of $460 that she acquired during the marriage.

Husband also worked during the marriage and had two retirement accounts, including an Indiana Teacher's Pension and a United Way Pension. Husband's teacher's pension, or TERF, had a coverture value of $79,722 as of the date of filing. Husband earned the United Way Pension prior to the marriage, and his monthly benefit of $463.34, commenced during the marriage in June 2008. Husband also received a gross amount of $1,872 per month in Social Security benefits.

Husband received a $225,000 inheritance at some point during the marriage, and he kept the proceeds from this inheritance in an account separate from Wife. The account had a balance of nearly $140,813 on the date of filing. Husband spent the rest of the proceeds on various things including gifts to foster siblings, $5,000 to Wife, and various marital debts.

The parties also accumulated various debts and liabilities throughout the sixteen-year marriage. In particular, a debt from Kay Jewelers that was used to purchase a new wedding band for Wife had a balance of $2,599 on the date that the petition for dissolution was filed. The parties also had incurred a debt with Home Depot, which was used to purchase a security system for the home, with a balance of $537 on the date of

4

filing. Husband and Wife also had a Capital One credit card with a balance of $403 on the date of filing, as well as a Menard's credit card with a balance of $208.

The parties also had a GE Money Bank credit card that was used to purchase a new mattress, with a balance of $2,202. In addition, there were debts to HSBC in the amount of $704, Discount Tires in the amount of $462, and Sam's Club in the amount of $234. These debts were all incurred during the marriage and before the petition for dissolution was filed.

During the course of the marriage, Wife had a bilateral total knee replacement that rendered her disabled and unable to work for a period of time. Wife applied for, and was approved for, Social Security Disability benefits in 2004. However, in 2008, Wife decided to return to work once Husband retired.

At some point, Husband and Wife went to the Social Security Office to notify the agency of Wife's return to work. The parties were notified of a work program that would allow Wife's disability benefits to continue for a while as she was attempting to return to the work force. Wife's Social Security benefits were always deposited directly into the parties' joint checking account.

Husband and Wife were sent a notification in May 2010, prior to the dissolution filing, that the Social Security Administration had overpaid Wife's benefits in the amount of $13,547 that had to be repaid. The parties used this money during the year of overpayment to fund various marital expenses. Husband's name was on the joint account as an owner at all times.

Wife also had student loan debts that were owed to Direct Loans. The total amount owed to Direct Loans as of the date of filing was $49,878; however, this amount represented a consolidated figure that included student loan debt that Wife incurred for her undergraduate degree that she earned prior to the marriage. Wife testified that the amount incurred during the marriage for her graduate degree was approximately $15,000. Husband later testified that he would agree that an amount of $13,000 in Wife's student loan debt was incurred during the marriage.

During the course of the marriage, the parties incurred debts to the Internal Revenue Service and the Indiana Department of Revenue for the tax year 2007, payable in 2008 resulting from jointly filed tax returns. These debts were paid in full before the dissolution. The Husband paid the tax debts either fully or partially with funds from his inheritance account.

Wife was not employed at the time of the final hearing, although she had previously worked as a mathematics teacher in the public schools, usually earning about $60,000 per year. Wife was actively seeking employment in the same capacity at the time of the final hearing. Husband was semi-retired and earned approximately $3,796 per month, or $45,552 per year, from all income sources, including pension payments, social security, and part-time employment. Wife testified that throughout the marriage either or both parties were usually employed, with Wife taking off periods due to disability or medical necessity and/or Husband retiring or suffering from periods of

unemployment. Husband testified that he primarily paid the household expenses but that Wife supplied food, clothing, and furnishings for the home.

On June 30, 2010, Husband filed a petition for dissolution of marriage, and the trial court set the matter for a provisional hearing on August 4, 2010. The parties entered into a provisional agreement on September 22, 2010. That agreement provided that Wife would be awarded temporary exclusive use and possession of the marital residence and that Husband would be responsible for the payment of the primary mortgage and secondary mortgage, the alarm system, automobile insurance, and his cell phone. Wife agreed to pay for all of the utilities, her automobile insurance, her cell phone, the loan payments and insurance for the vehicle that her son drove, repair bills associated with her automobile, and the repair bills for the marital home's bathroom. No request for modification of this provisional agreement and order was ever filed by either party, and it was in effect until the trial court issued the final dissolution decree on October 13, 2011.

The trial court ordered the parties to complete discovery within sixty days of December 6, 2010, and noted that there was an agreement to split the cost of an appraisal for the marital residence. The trial court scheduled a final hearing for March 28, 2011. On March 9, 2011, Wife filed a motion to continue the final hearing because of the parties' continued efforts to exchange information and settle outstanding issues. Husband did not object to the request for the continuance, and the trial court reset the matter for June 6, 2011.

Thereafter, Husband's counsel requested a continuance on the first two of the three dates of the final hearing, citing a lack of completion of discovery and/or a lack of possession on her behalf of the requisite information concerning the marital assets and debts. These requests were denied by the trial court each time because Husband's counsel could not state specifically what was required beyond a lack of a recent appraisal of the marital home, and there was no statement that any formal requests for discovery had been made. Both attorneys confirmed that the parties had exchanged discovery.

On March 23, 2011, Husband's counsel filed a motion for a new final hearing date, in essence asking the trial court to "move-up" the June 6, 2011 date that had been previously scheduled. That request was denied, and the trial court proceeded with the final hearing on June 6, 2011.

At some point during the final hearing, Husband introduced an exhibit entitled "List of Marital Estate." Tr. p. 127. That itemization included the 2006 Dodge Caravan once used and paid for by Wife's brother but returned to the parties as marital property, the 2009 Chevrolet Impala that Wife's son drove, the entire debt incurred during the marriage and owed to the Social Security Administration, and the entire balance owed on Wife's student loan debt to Direct Loans, including the amount incurred prior to and during the marriage. Husband also specifically valued the marital home at the precise value that was ultimately given to it by the trial court and stated that it resulted in a negative value after payment of the mortgage and the home equity loan.

8

Husband's valuation of the marital estate did not include any debts that were paid to the Internal Revenue Service or the Indiana Department of Revenue. He also did not include any down payments that he made toward the mortgages against the residence. Finally, Husband did not include his provisional payments in the marital estate, nor did he directly request reimbursement for them at any time during trial.

When the matter was not concluded in the allotted time, the matter was reset for the trial court to hear additional evidence. On July 27, 2011, the parties completed their presentation of evidence in this matter. The trial court took the matter under advisement, and the parties waived the ninety-day limitation set forth in Trial Rule 53.

On October 13, 2011, the trial court issued the decree of dissolution and made its own specific findings. The trial court included Wife's brother's former vehicle—the 2006 Dodge Caravan—in the marital estate. Also included in the marital estate was the 2009 Chevrolet Impala that Wife's son drove. All of the debt owed to the Social Security Administration that was incurred during the marriage was included. Wife's student loan debt incurred during the marriage was included in the marital estate. However, none of the provisional payments that Husband made were included. The trial court valued the home at the value stipulated to by the parties at the final hearing and awarded it, with its negative equity value, to Wife.

The trial court denied Husband's requests to be reimbursed for payments toward any federal and state taxes owed, as well as for any down payments toward the loans on the home. The trial court found that he made any payments toward these debts

9

voluntarily and that there was no evidence to suggest that Husband desired to be reimbursed for any of those payments during the marriage.

The trial court set aside Husband's inheritance account from equal division of the marital estate as his own separate property and divided the remaining estate equally, which resulted in a lump sum equalization payment payable from Husband to Wife. That amount was reduced to judgment and secured with a lien on Husband's inheritance account.

Thereafter, Husband filed a motion to correct error on November 18, 2011, which the trial court ultimately denied. Husband now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Because the trial court made its own findings in this matter pursuant to Indiana Trial Rule 52(A), we cannot set aside said findings unless they are clearly erroneous. Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). We do not reweigh evidence or assess witness credibility, and the evidence presented is to be viewed most favorably to the judgment entered. Id.

We also apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. Davis v. Davis, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). We may only disturb the judgment of the trial court when there is no evidence supporting the findings or the findings fail to support the judgment. Smith v. Smith, 938 N.E.2d 857, 860 (Ind. Ct.

10

App. 2010). The party appealing the trial court's judgment must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. Id.

## II. Husband's Claims

### A. Inclusion of Assets, Debts, and Valuation of Property

Husband contends that the trial court erred in including various assets in the marital estate, such as the vehicle that was originally purchased for Wife's brother and the automobile that Husband and Wife bought for Wife's son's use. Husband also maintains that the trial court erred in including the overpayment of social security benefits as a debt, by including a portion of the Wife's student loans that were incurred during the marriage as a debt, by not including Husband's provisional payments for reimbursement in the marital estate, and by valuing the marital home with the evidence before, rather than after, obtaining an additional appraisal.

The law governing the division of marital property is a two-step process. Estudillo v. Estudillo, 956 N.E.2d 1084, 1090 (Ind. Ct. App. 2011). Specifically, the first step is the one where the trial court determines what property should be included in the marital estate, and in the second step the trial court divides the marital property. Id. All marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a). Marital property includes both assets and liabilities. Smith, 938 N.E.2d at 860.

The "one-pot" theory ensures that all assets and liabilities are subject to the trial court's power to divide and award. Thompson v. Thompson, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004). Student loan debts are no exception. Nornes v. Nornes, 884 N.E.2d 886, 889 (Ind. Ct. App. 2008). Even if the trial court may determine that a particular asset or liability should ultimately be awarded solely to one spouse, it must first include the asset or liability in its consideration of the marital estate to be divided. Thompson, 811 N.E.2d at 914. In other words, the trial court has no authority to exclude or set aside marital property but, quite the contrary, must divide all property. Moore v. Moore, 695 N.E.2d 1004, 1010 (Ind. Ct. App. 1998).

A trial court "abuses its discretion when there is no evidence in the record supporting its decision to assign a particular value to a marital asset." Thompson, 811 N.E.2d at 917. Trial courts may choose as the date of valuation any time between the date upon which the petition for dissolution was filed and the date of the final dissolution hearing. Bertholet v. Bertholet, 725 N.E.2d 487, 497 (Ind. Ct. App. 2000).

Generally, when any property is included in a challenging party's own evidence as being marital property, the trial court's conclusion to include said property in the marital estate is fully supported by the evidence. O'Connell v. O'Connell, 889 N.E.2d 1, 11 (Ind. Ct. App. 2008). "A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." Alexander v. Alexander, 927 N.E.2d 926,935 (Ind. Ct.

12

App. 2010) (quoting Houchens v. Boschert, 758 N.E.2d 585, 590 (Ind. Ct. App. 2001)), trans. denied.

Vehicles, for the purposes of marital property division, are considered under the "totality of the circumstances" approach. Brackin v. Brackin, 894 N.E.2d 206 (Ind. Ct. App. 2008). The trial court must examine, among other factors, who holds title to the vehicle, who has paid for the vehicle, whose possession the vehicle is in, and who has use and enjoyment of the vehicle. Id.

At the outset, we note that the assets and debts that Husband asserts should not have been included in the marital estate were, in fact, included in his itemization of the marital estate at the final hearing. Pet. Ex. 16. In particular, Husband included the 2006 van that was once used and paid for by Wife's brother but returned to the parties as marital property, the 2009 Chevrolet Impala that Wife's son drove, the entire debt incurred during the marriage and owed to the Social Security Administration, and the entire balance owed on Wife's student loan debt to Direct Loans, including the amounts incurred both before and during the marriage. Id. Furthermore, Husband specifically valued the marital residence at the precise value that the trial court assigned to it, and stated that it resulted in a negative value after payment of both mortgages. Id. Finally, Husband did not include his provisional payments in the marital estate.

In light of these circumstances, it is difficult to discern what Husband is claiming as error. As discussed above, the trial court used Husband's own evidence and stipulations to determine what was in the marital estate and how any of the same assets

13

and liabilities were valued. In fact, the trial court actually assigned property or liabilities values more to Husband's benefit than he even stipulated to at the final hearing, such as the student loan debt that had accrued during the marriage, rather than the entire amount of the loan as Husband had presented. Appellant's App. p. 27.

Nevertheless, the evidence submitted at the final hearing supports each of the trial court's determinations with regard to what should have been included in the marital estate. For example, the evidence demonstrated that the vehicle titled in the names of the parties that was once driven by Wife's disabled brother was returned to the marital estate in 2010, prior to filing. Once returned, the vehicle was paid for with marital funds, and was later used by Wife as marital property. Again, this vehicle was also conceded by Husband to be marital property in his own itemization of the marital estate. Pet. Ex. 16. Second, the vehicle brought by the parties for the use of Wife's son was always paid for and maintained by funds from the marital estate and was titled in Wife's name. Husband also stipulated that this vehicle was marital property. Id.

Additionally, the debt that was incurred as a result of the need for repayment of Wife's social security disability benefits was a marital debt that was incurred during the marriage. The benefits were used jointly by the parties and Husband stipulated that this debt was a marital liability. Pet. Ex. 16.

As discussed above, Wife also brought student loan debt into the marriage and incurred additional debt during the marriage. Thus, Wife's student loan debt could have been considered marital debt by the trial court. Moreover, Husband even stipulated that

14

all of that debt could be included in the marital estate. Id. Nonetheless, the trial court only allocated that portion of the student loan debt accrued during coverture as a marital liability. This allocation actually weighed more in Husband's favor than what he had stipulated. Appellant's App. p. 27.

Also, the exclusion of Husband's provisional payments from the marital estate rested within the trial court's discretion. With the evidence before it, the trial court could have arrived at a different conclusion but it did not. That said, the trial court's determination does not amount to an abuse of discretion or a clearly erroneous decision.

Also, the valuation of the marital residence used by the trial court was actually Husband's own value, which resulted in a negative equity amount. Pet. Ex. 16. The trial court need not have appraisals to value real property, but it may utilize any evidence before it, including only the evidence from one party, insofar as the evidence provides a valuation for any time period from the date of filing the dissolution action to the date of the final hearing. Husband and Wife both clearly stipulated to the value of the home as of the date of the final hearing, which is the value that the trial court used in valuing the marital residence.

The evidence supported the trial court's determination that the itemized assets and debts were to be included in the marital estate. Moreover, our review of the record shows that all of the assets and liabilities included in the marital pot were valued by the trial court with ample evidence before it. For these reasons, we conclude that the trial court

did not err in determining what assets and liabilities were to be included in the marital estate or in placing the values that it did on the assets.

## B. Division of Assets

In a related issue, Husband argues that the trial court erred in dividing the marital estate. In essence, Husband maintains that he was entitled to a greater percentage of the marital assets.

In resolving this issue, we note that the trial court must divide the marital property with the presumption that an equal division is what is just and reasonable. In particular, Indiana Code section 31-15-7-4(b) provides that

The court shall divide the property in a just and reasonable manner by:

(1) division of the property in kind;

(2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;

(3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or

(4) ordering the distribution of benefits described in IC 31-9-2-98(b)(2) or IC 31-9-2-98(b)(3) that are payable after the dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt.

A party may rebut the presumption of equal division in accordance with Indiana Code section 31-15-7-5:

[A] party [may] present evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

16

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

    (A) before the marriage; or

    (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

The division of marital assets is a matter within the trial court's sound discretion. Estudillo, 956 N.E.2d at 1090. We will reverse only for an abuse of that discretion. Nornes, 884 N.E.2d at 888. When a party challenges the trial court's division of marital property, that party must overcome the strong presumption that the trial court fully considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to this court's consideration on appeal. Estudillo, 956 N.E.2d at 1090.

17

In reviewing the trial court's discretion in dividing marital property, it is to be reviewed by considering the division as a whole, and not item by item. <u>Fobar v. Vonderahe</u>, 771 N.E.2d 57, 59 (Ind. 2002). A trial court is to divide marital property equally, but it may deviate from equal division so long as it sets forth a rational basis for its decision. <u>Hacker v. Hacker,</u> 659 N.E.2d 1104, 1109 (Ind. Ct. App. 1995). We will reverse a property distribution only if there is no rational basis for the award and, although circumstances might have justified a different distribution, we may not substitute our judgment for that of the dissolution court. <u>Augspurger v. Hudson</u>, 802 N.E.2d 503, 512 (Ind. Ct. App. 2004).

In this case, the trial court divided the marital estate equally, with the exception of setting aside Husband's separate inheritance account. The account containing his inheritance was set aside as his own because he had rebutted the presumption of equal division in that regard.

Beyond his age and retirement status, Husband cites no clear reason for the additional challenge to the property division. In fact, Husband did not actively argue at trial for an unequal distribution of the marital estate beyond that which concerned the inheritance account.

Although Husband did introduce an exhibit at trial citing an unequal division of the marital estate in his favor, he contradicted that exhibit with his own testimony, stating that he only wished to divide the marital debts equally and receive his inheritance account in its entirety as his separate property. This is precisely the approach the trial court took.

18

Nonetheless, Husband appears to claim that he should have received a greater share of the marital estate because he contributed more funds to the marriage, Wife's earning potential is greater than his, and Wife engaged in deceitful conduct. Notwithstanding this claim, the evidence showed that: 1) both parties contributed monetarily and non-monetarily toward the marriage throughout its entirety; 2) Wife was unemployed at the time of the dissolution, was actively looking for employment as a mathematics teacher, and suffered from extensive medical problems, having actually been disabled in the past; 3) Husband, although semi-retired, was still employed part-time and was receiving monthly pension and social security benefits; 4) Husband's inheritance account was primarily kept as separate property from its inception, even though he voluntarily—and with no expectation of reimbursement—contributed from it to various marital expenses; 5) the award of the inheritance account to Husband is considered an economic resource that weighs against Wife's earning potential and younger age; 6) both parties were fully aware of the marital assets, debts, and obligations identified by themselves through their own exhibits and testimony, as well as by the trial court; and 7) there was absolutely no evidence of dissipation of marital assets or deceit on the part of either party.

In light of these circumstances, the trial court's judgment fell in accordance with the statutory requirements. In our view, Husband's status of being older than Wife and semi-retired is not enough to rebut the presumption of an equal division, particularly when the trial court had ample evidence of the other factors before it to consider. As a

result, we conclude that the trial court did not err in dividing the marital property in the manner in which it did.

### III. Motion for Continuance

Husband next argues that the trial court erred in denying his motions to continue the final hearing. Husband argues that the denial of his motions resulted in prejudice to him and amounted to an abuse of discretion.

In resolving this issue, we note that the decision to grant or deny a motion for a continuance is governed by Indiana Trial Rule 53.5 and rests within the sound discretion of the trial court. Thompson, 811 N.E.2d at 907-08. An abuse of discretion may be found when the moving party has shown good cause for granting the motion. Id. However, no abuse of discretion will be found when the moving party has not demonstrated prejudice by the denial. Id.

In this case, the dissolution matter had been pending for approximately one year before the final hearing. Husband's counsel entered a formal appearance on the day of the final hearing, but he had been informally representing Husband for over one month. Husband had been represented throughout the proceedings by other counsel, and discovery had been exchanged many months before the hearing.

Husband's sole reason for requesting a continuance on the first day of the hearing was to obtain an appraisal of the marital home. However, considering that the appraisal was not necessary, the dissolution court was not presented with good cause to grant a continuance. There was ample evidence before the trial court to value the marital home.

In fact, the dissolution court used Husband's own value that he gave the marital residence in his itemization of the marital estate. As a result, the dissolution court did not err in denying Husband's first request for a continuance.

Husband's reason for requesting a second continuance on the second day of the hearing was with regard to the lack of information concerning the financing of the home and Wife's employment status. Husband's counsel had served a subpoena on Wife on July 22, 2012, approximately four days before the second day of trial. The subpoena requested a variety of information that had already been provided, which counsel for Wife promptly provided again. More specifically, Husband sought information regarding the financing of the marital residence and Wife's employment status, all of which Wife testified to at trial. In short, there was no good cause for granting Husband's second motion for a continuance, and he was not prejudiced when the trial court denied the continuance.

## IV. Appellate Attorney Fees—Remand

Finally, Wife cross-appeals, arguing that we should remand this case to the trial court for an award of appellate attorney fees. However, the trial court was never deprived of jurisdiction to award appellate attorney fees to either party. Wagner v. Wagner, 491 N.E.2d 549, 555 (Ind. Ct. App. 1986). Thus, wife can petition the trial court for such fees without the necessity of a formal remand by this court. Id. We therefore deny Wife's request for remand.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.